## Case No. 15,844.

### UNITED STATES v. MYERS et al.

[2 Brock. 516.] [1]

Circuit Court, D. Virginia. May Term, 1836.

#### EQUITY — CONCURRENT JURISDICTION — TRUSTS — PARTIES.

1. It is a general principle of equity, that wherever a party has a perfect remedy at law, he cannot come into a court of equity to enforce his rights: some defect in the legal remedy being the very foundation of the equitable jurisdiction. But where, superadded to this legal remedy, a trust is expressly created, either by the deed of the parties, or by the operation of law, or both, a court of equity has a concurrent jurisdiction with the court of law; and the party may proceed, at his option, either to enforce his legal security, or, may come into equity to enforce the trust.

[Cited in Pierpont v. Fowle, Case No. 11,-152.]

[Cited in Hempstead v. Watkins, 6 Ark. 317.]

2. Although, a court of equity, will not interfere to adjust equities between a debtor defendant, and his debtor, upon a bare possibility that a resort may ultimately be had to the latter, yet, where the foundation of the suit is a trust, and the trust subject is distributed among several, the cestui que trust, has a right to call for an account of the trust subject, in whatever hands it may be found.

3. Where the jurisdiction of the federal courts has once attached, no subsequent change in the relation, or condition of the parties, in the progress of the cause, will oust that jurisdiction. The strongest considerations of utility and convenience require, that the jurisdiction being once vested, the action of the court should not be limited, but, that it should proceed to make a final disposition of the subject.

[Cited in Pierpont v. Fowle, Case No. 11.152; Davis v. Tileston, 6 How. (47 U. S.) 120.]

[Cited in Kittredge v. Emerson, 15 N. H. 261.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by John W. Brockenbrough, Esq.]

4. Where the jurisdiction depends upon the party, it is the party on the record.

5. The United States being plaintiffs and their debtors being entitled, by the award of commissioners under the treaty with France, to a sum of money more than adequate to the payment of their debt, *held*, that, although the United States may elect to retain the amount of their debt, it is altogether discretionary with them whether they will do so or not; and the right to retain, constitutes no impediment to the prosecution of their suit in a court of equity.

Moses Myers and John Myers, trading under the firms of Moses Myers & Son, and John Myers & Co., being largely indebted to the United States, for duty bonds, with Richard Drummond as their surety, by two several deeds, dated respectively in October, 1819, and March, 1820, conveyed all their property, whether real or personal, in possession and in action, to William B. Lamb and Richard Drummond, surety as aforesaid, in trust, to receive the debts due to them, and to sell and dispose of all their estate and effects, and after paying the reasonable charges of the trust, to apply the proceeds to the payment of their debts in classes, giving the preference to the debts due to the United States. Before the execution of these deeds, the Messrs. Myers had employed Myer Myers, then in Europe, as their agent, to collect a debt due to them in Norway, and particularly specified in a schedule attached to the deeds. A judgment at law was obtained by the United States against the obligors in the bond, which was in part satisfied. A portion of the debt not having been paid, the United States brought their suit in equity in this court, at the instance, as it would seem, of Drummond, the surety in the bonds, for the purpose of recovering it out of the trust fund, making Moses and John Myers, Lamb, and Drummond, the trustees, and Myer Myers, defendants. A motion was made at this term, to dismiss the bill, as against Myer Myers, upon the ground, that as against him, this court had no jurisdiction of the case.

Before BARBOUR, Circuit Justice, and DANIEL, District Judge.

DANIEL, District Judge. The objections to the jurisdiction of the court, urged by the counsel for this motion, are substantially these: 1. That this suit, although in form, a suit in the name and on behalf of the United States, is, in reality, a controversy between citizens of Virginia, and, therefore, proper for a state court only. 2. That, admitting this suit to have been properly instituted as against Moses Myers & Son, and that the United States had a direct and substantive claim against them, still that there never was just ground for joining Myer Myers as a party defendant, and this suit ought, therefore, as to him, to be dismissed. 3. That admitting the regularity of this suit, originally, as to all these defendants; yet the claim of the United States having been satisfied, the court should arrest its proceedings at this point, and not go on to adjudge the controversy as between the defendants.

1. In support of the first of these objections, it is pressed upon the court, that there never was any interest or necessity operating upon the United States to compel them to the course they have adopted. That by means of their judgment against Moses Myers & Son, and their surety, they had a perfect remedy at law, which they were bound to carry out to its utmost extent; and that the sufficiency of that security (nowhere called in question) relieved them from all necessity for resorting to other sources. For these positions, the case of Linney v. Dare, 2 Leigh, 588, is relied on. The principle, that wherever there exists a right or remedy exclusively legal, and perfect in its character and operation, a court of equity cannot take cognizance, is fully recognised: and, it is likewise conceded, that a court of equity will never interfere merely to settle equities between a debtor, and his debtor, upon a bare possibility that resort may ultimately be had to the latter. This last principle, and nothing else, I conceive to have been settled in Linney v. Dare, for in that case, there was no trust, nor other foundation for equitable interposition. The surviving partner and his surety were both living, and recourse to them, at law, was perfectly unobstructed. How is it with the case under examination? Here is a trust expressly created by deed. The United States, both by the terms of the conveyance and by operation of the statute, are made the cestui que trust. They have the right, I conceive, to enforce their legal security, or to proceed under the trust, ad libitum; and in the latter event, they have the consequent right, to call for an account of the trust subject in the hands of whomsoever it may be. In the latter event, too, the residence of the parties is wholly immaterial, for it is in virtue, not of the residence, but of the character of the plaintiffs, that the jurisdiction attaches. No importance is here yielded to the objection, that the United States are said to have sued upon notice and demand from the defendant Drummond; they had the right, upon the above view of the case, to sue independently of such requirement, though perhaps they were bound to use their right so as not to visit injury upon others. I can perceive then, neither from the pleadings, the evidence, nor the argument, that this first objection can be sustained.

2. With respect to the second objection, it would seem, that if the plaintiffs are rightfully in court, as cestui que trust, they have the right by regular consequence, to call for and pursue the subject, wherever it may be. I should think, that putting aside the proof or the confession of agency, for the trustees or their grantors, in the management of the subject, and simply upon the facts of possession, and indebtedness, or either of them, on the part of Myer Myers (once admitting

the right to the trust subject), it would be competent, on principles of justice, and advisable, on the score alike of prudence or celerity, to proceed against him, conjointly with the original debtors, and their trustees. But I do not think that, upon the pleadings in this cause, Myer Myers stands, prima facie, in a contingent attitude of creditor or debtor, wholly separated from the management of this fund. It seems, on the contrary, that he has had material agency in the management of the specific subject. Whatever, then, may be his ultimate responsibility, upon a full adjustment between the parties, I must regard him as an agent, taking upon himself the management of this subject, with full notice of its connexion with the rights of the cestui que trust, and emphatically, therefore, liable to account whenever a settlement should be called for. This opinion is in conformity with the decisions of Newland v. Champion, 1 Ves. Sr. 105; Utterson v. Mair, 2 Ves. Jr. 95; Alsager v. Rowley, 6 Ves. 748; and Burroughs v. Elton, 11 Ves. 29.

3. The third and last point, at first view, seems encompassed with rather more of difficulty than surrounds the two former; yet, this difficulty will, it is thought, upon nearer inspection, be found to be rather in appearance than reality. It may here, too, be remarked, that the question now presented, is, at this time somewhat premature; the facts assumed for its basis, not being formally before the court. There is no proof, direct and certain, that the United States have received, or will receive, satisfaction of their claim against Moses Myers & Son, from any source other than the trust subject.

The objection now considered, concedes the jurisdiction of the court at the time when this suit was instituted; but insists upon the assumption of a subsequent satisfaction, as having destroyed that jurisdiction admitted to have been once perfect. The authority of the court to adjudge the rights of the parties once admitted, it may naturally be asked, how that authority can have been impaired by a recognition of the rights of, or by a satisfaction made to, either party? Such recognition or satisfaction, does not change one legal feature or principle of the case, nor the positions in which the parties stand to each other, or to the court, but is, on the contrary, rather an admission, or confirmation of all these. In the case at bar, there is not the slightest change, either of parties, contracts, or duties; all these remain as at the institution of the suit; what possible ground, then, can there be, for changing the rules which were applicable to them at that period? I can perceive none whatever, in any supposed necessity for restricting the courts of the United States within their proper orbit, for that they cannot transcend, while they honestly limit their action to cases in which the United States are fairly and necessarily parties; and to such, they are imperiously bound to extend their action, whoever

may be directly, or incidentally, embraced with it. If there be no paramount constitutional necessity for a change of forum, none surely can doubt the advantages as to economy, either of time or expense, of a system which terminates in a single proceeding, matters that otherwise would be drawn out in multiplied and costly litigation. A course like this, is, moreover, sanctioned by the inveterate practice of courts of equity, which, when once properly invested with jurisdiction, will never parcel out the subject of controversy to different tribunals. Should a practice like that proposed by the present motion, prevail in this court, the mischiefs incident to its establishment, are easily anticipated. Few instances will ever occur, where the priority of the United States will be asserted, which will not involve an examination of various and conflicting interests, because such cases will almost uniformly be those of absolute insolvency, or of different creditors claiming under specific liens upon the same subject, or by substitution in the place of those who may have been preferred. Again:—Where the United States may have no concern, suppose there should be several incumbrances upon the same subject, the last of whom should be a citizen of another state? In either of these cases, it would, probably, be indispensable to examine into the foundation, and to settle the rank, of the respective claims; to ascertain, by accounts to be stated, their precise extent, and to convert the subject pledged into funds applicable to some or all of the demands upon it. The representatives of all the different interests are convented, their rights adjusted, the subject converted into money and actually brought into court. What shall be done? Shall the court, dispensing justice to some of the parties only, turn from its door the residue, whom it had not only power to call, but whom it was compelled to call before it; and with their expulsion, cast from it as a waif, the remainder of the fund, to be struggled for in a different forum? The evils of such a proceeding, would, indeed, be grievous; and its absurdity most glaring, from a contrast with the admission, that over persons and subject the court once had complete jurisdiction; but that such jurisdiction has been taken away, the character of both parties and subject remaining wholly unchanged! But the question here discussed, appears to me not one of the first impression, or to be dependent solely upon reasonings from principle. It seems to have been considered by the supreme court, and by that tribunal, in effect, if not in terms, decided. Thus, in the case of Conolly v. Taylor, 2 Pet. [27 U. S.] 556, it is ruled, that "where there is no change of parties to a suit during its progress, a jurisdiction depending upon the condition of the parties, is governed by that condition, as it was at the commencement of the suit." So, too, the case of Dunn v. Clarke, 8 Pet. [33 U. S.] 2, cited and relied on by the counsel for this motion, appears to me to coincide with the authority just quoted, and

to operate strongly, if not conclusively, against the present application. In the latter case from Peters, a judgment in ejectment had been obtained in the state of Ohio, by a citizen of Virginia against citizens of Ohio, and an injunction to this judgment at law granted: the plaintiff at law, the defendant in equity, then dying, the suit was revived in the name of his representative, a citizen of Ohio. Upon this case, the question of jurisdiction was raised, the parties being then all citizens of Ohio. The court say, that although the defendant in equity, is a citizen of Ohio, yet, he was the representative of the plaintiff at law, who was a citizen of Virginia, and "this fact" (that is, his citizenship in Ohio) "will not deprive the court of an equitable control over the judgment." And again—"Of the action at law the circuit court had jurisdiction, and no change in the residence or condition of the parties can take away a jurisdiction which has once attached." Finally, regarding this motion as neither enforced by any overruling authority by which the judgment of this court must be controlled, nor as consistent with justice to all the parties, I am constrained to refuse it.

BARBOUR, Circuit Justice, after stating the case, said:

Various points have been made in support of this motion, which I will briefly examine in the order in which they were presented.

1. It is contended, that this is substantially a contest between Drummond, the surety in the custom-house bonds, one of the trustees, and also one of the defendants, and Myer Myers, his co-defendant, and that the United States are only nominal parties: and, that, consequently, the court has not jurisdiction, because they are both citizens of Virginia. If this were so, then the consequence contended for would follow. But are the United States only nominal parties? It is not denied, that a debt is due to them, that it was originally due from Moses Myers & Son, and that it is charged upon the fund conveyed by them in trust, and that, independently of that charge, created by the parties, the law, in case of an assignment of the debtors' whole estate, as in this case, gives them a priority of payment; and this is a bill brought to enforce that charge, and that priority in behalf of a real creditor, competent to sue in this court. 1 Story's Laws, p. 465, c. 74, § 5; Act March 3, 1797 [1 Stat. 515, c. 20]. I understand the term, "nominal party," to import one to whom nothing is due, but who is suing in his name for the benefit of another. Now, here, there is something due to the United States, and this bill is brought to enforce the recovery, and the decree must be in favour of the United States. The counsel for the defendants relied upon the case of Brown v. Strode, 5 Cranch [9 U. S.] 303. That was a suit brought by the justices of a county court, to whom, as obligees, the defendant, an executor, executed an official bond, for the faithful discharge of the duties of his office. The nominal plaintiffs and defendants were all citizens of Virginia, and yet the supreme court held that this court had jurisdiction; but why? Because it appeared upon the record, that they sued, not for themselves, but for an alien creditor, having claim against the estate; they were, in truth, but nominal parties: to themselves, nothing was due: for themselves, they claimed nothing; but the suit was brought in their names, as by law it was obliged to be, for the benefit and at the relation of another, who was an alien creditor; the fact of his being an alien creditor, appearing, as it was necessary it should appear, upon the record, this case is in direct contrast with the one at bar, in the important particulars, that here, the United States are suing, not for another, but for themselves; not at the instance of a relator appearing upon the record, and who, under a decree in their name, would receive the amount; but prosecuting their own claim, at the request, indeed, as appears from Drummond's answer, of one of the defendants, in the spirit of a liberal justice, to make the burden fall where it ought to rest. If this would make the person at whose instance this course is pursued, the substantial party, as well might it be said, that if a principal and surety were to execute a joint and several bond, and the creditor were, at the instance of the surety, to prosecute his action against the principal only, that the surety was the substantial party plaintiff. We consider the principle settled, nay, it is said, in 4 [Pet.] Cond. R. 128, note [Morgan v. Morgan, 2 Wheat. (15 U. S.) 290], that it may be laid down as a rule without exception, that in all cases where the jurisdiction depends on the party, it is the party on the record. Now, the party plaintiff here, is the United States, who are undoubtedly competent to sue here as plaintiffs; and all the defendants, as far as the jurisdiction depends on citizenship, are citizens of Virginia, and, considered in that respect only, are clearly suable here as defendants.

2. It is argued, that the court cannot take jurisdiction of this case, because the United States having obtained judgment, for their claim against Drummond, the surety, who is solvent, they have complete remedy at law. Let us examine the application of this principle to this case. It is, indeed, enacted by the sixteenth section of the judiciary act, that suits in equity shall not be sustained in either of the courts of the United States, where plain, adequate, and complete remedy may be had at law. 1 Story's Laws, 59 [1 Stat. 82]. It has been decided, again and again, that this is nothing but an affirmance of the well known principle of equity; and it is said in Boyce v. Grundy, 3 Pet. [28 U. S.] 210, that to prevent resort to equity, the remedy at law must be as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity. The principle, which we are now

considering, applies to those cases in which, ordinarily, the only remedy is at law; but the party comes into equity on the ground, that by reason of some impediment in the way, or some unfair legal advantage acquired by his adversary, justice cannot be done him at law. The court inquires, whether such impediment, or legal advantage exists; and, accordingly, as it does, or does not, grants, or withholds relief. But it does not apply to those cases, in which the courts of equity and law, have a concurrent jurisdiction. In those cases, although the concurrent jurisdiction of the court of equity most probably originated, from the consideration, that there was not, or might not be, an adequate remedy at law, yet where that concurrent jurisdiction has been established, if a party elect to come into a court of equity, it is no objection to its jurisdiction in the given case, that the party might have remedy at law, even, although, in that particular case, the remedy might be adequate. Thus, if one man appoint another his bailiff, or receiver, I suppose there is no doubt that if money be received, and not accounted for, the party may bring a suit in equity for an account, or an action of account or assumpsit at law; and the equity jurisdiction will not be ousted, because these concurrent remedies lie at law. Again:—A party may now have remedy at law upon a lost bond; but that does not oust the ancient equity jurisdiction. But what is more in point, is, the case put by Mr. Johnson, which is admitted in all the books, that if a party have a mortgage and a bond for the same debt, he may even pursue both simultaneously, until he gets satisfaction. That is, in effect, the case here, for here, there is a specific lien, which places this case upon the same footing with the mortgage. If it were true, that where the United States had remedy at law, they could not be entertained in equity, then they never could come into equity, in cases of custom-house bonds, where the sureties are solvent, for they always have remedy on them at law; and yet, not to mention other cases, in U. S. v. Howland, 4 Wheat. [17 U. S.] 108, and Hunter v. U. S., 5 Pet. [30 U. S.] 173, they were plaintiffs, as here, seeking to charge a trust fund, in cases of custom-house bonds, and in the first of these cases, as here, a judgment, as appeared by the bill, had been obtained against the surety; and it does not appear in the case, that he was unable to pay.

3. It is contended, that the court cannot take jurisdiction against Myer Myers, who, it is said, stands in the relation of debtor to the plaintiffs' debtors, and, as such, cannot by them be called to account; and the case has been likened to one of a debtor to a decedent's estate, against whom, it is said, and we think correctly, the creditor of the decedent can have no remedy, except under special circumstances, such for example, as collusion with the executor, &c. We do not consider the cases alike. We look upon Myer Myers as standing in the relation, not of a mere debtor, and the plaintiffs as mere common creditors at large; but if Myer Myers has received and not accounted for any portion of the trust subject, then we consider him as the actual holder of part of a fund, as to which the plaintiffs are entitled to priority of payment, by operation of law, and to a specific lien, by the deed of the parties. Considered in this aspect, we think it can be shown on principle, that he is liable to account to the plaintiffs. But we forbear to pursue the reasoning on the subject, because we think the question is closed by authority. In U. S. v. Howland, before cited, Shoemaker and Travers were indebted to the United States on duty bonds; the principals became insolvent, and assigned all their estate, particularly the cargo on board a particular ship, to pay their debts, and that to the United States first. The United States obtained a judgment against the sureties, which was unsatisfied. The sureties filed their bill to subject the proceeds of that cargo to their claim, and made Howland and Allen, the owners of the ship, and who had received the proceeds of the cargo, defendants. It was objected, as here, that they were improperly made defendants, but the supreme court held otherwise. That we consider as a case directly in point, to prove that Myer Myers was properly made defendant. We give no opinion upon the state of his indebtedness; at present, the inquiry is, whether we can rightfully take jurisdiction, at the instance of these plaintiffs, as against him? Whether he holds anything liable to their claim, and if so, how much, will be the subject of future inquiry?

4. It is insisted, that under the treaty with France, sums of money have been awarded to Moses and John Myers, more than the claim of the United States, which they can retain in satisfaction of their debt, and, therefore, they ought not to prosecute their claim here. The United States may, if they elect so to do, apply so much of the money thus awarded, as will satisfy their claim. This they actually did in the case of the Spanish indemnity, by an act of congress, providing, that no part of the sums awarded to any of their debtors, should be paid to them without retaining the amount of their debts, respectively, to the United States. Whensoever, in relation to this case, they shall elect to pursue this course, it will be then proper to consider what bearing that will have upon the subject. That, however, is not the present posture of this case; and, we think, that the power to retain, until exercised, constitutes no impediment to the prosecution of this suit.

5. The fifth and last point, is this: Whether it is competent for this court to decree, as between co-defendants, in a case where plaintiffs and defendants are rightfully convened before the court, though on account of the citizenship of these defendants, one of them could not have maintained an original suit in this court against the other? Upon this point,

I acknowledge, I have felt a serious difficulty. On the one hand, such a course seems, in some sense, to be obnoxious to the objection that the court was thus taking jurisdiction between parties indirectly, which they could not take directly. On the other, the inconveniences of a contrary course are so great, that the argument, ab inconvenienti, presses with great weight. Thus, take the case of a citizen of Virginia, dying intestate, leaving all his distributees, but one, also citizens of Virginia, and also administration taken out by a citizen of Virginia. The foreign distributee brings his bill in this court against the administrator and co-distributees. This suit is rightly instituted, both in respect to plaintiff and defendants. Must a decree be made, assigning the plaintiff only his share, making no disposition of the remainder? Let us put another case. A citizen of Virginia, mortgages real estate in Virginia, to two or three citizens successively, and then makes a further mortgage to a citizen of another state; the last mortgagee brings his bill in this court, against the mortgagor, and all the prior mortgagees, praying a sale of the subject, and asking that what may remain, after satisfying the previous liens, shall be applied in discharge of his debt. The subject is sold: what shall be done with the proceeds?

We incline to think, that the true principle is this: that all inquiries as to the character of parties in this court, are, in their nature, preliminary; and, that when the court is once satisfied that all the plaintiffs are such, as may properly come into this court, and all the defendants are such, as may properly be brought into this court, it is then competent to make any decree which a state court might make; in a word, that, although this court is limited, as to the persons for whom, and against whom, it may take jurisdiction, yet, when the suit is rightly constituted, as between plaintiffs and defendants, it is not limited in its action on the whole case. And our impression is that the cases may be explained on this principle. Thus, without going into them in detail, take the strongest one,—Dunn v. Clarke, 8 Pet. [33 U. S.] 1. There all the complainants, and all the defendants were citizens of Ohio; but, as it was an injunction to the circuit court of Ohio, the court sustained jurisdiction as against one defendant who was the representative of the plaintiff at law; but declined jurisdiction as to all the other defendants, who had not been parties to the suit at law. Even taking jurisdiction against the one, seems to be, in some degree, a departure from the strict rule, as all the parties were citizens of the same state; but it being necessary so to do, to stay the execution of their own judgment, they did so, whilst, as to the other defendants, this principle not applying, they disclaimed jurisdiction. No case has been found deciding this very point, but there being no case the other way, considering the great inconvenience, nay, mischief, which might result from a contrary course: that it seems rather to be a question of jurisdiction between the parties, than a question of power over them, after jurisdiction vests: that here all the parties are rightly constituted: that in any state court, a decree might be made under the circumstances stated between co-defendants: that the supreme court has said, in [Gassies v. Ballon] 6 Pet. [31 U. S.] 761, that the cases on the question even of jurisdiction as to the parties, have gone as far as it would be proper to go, we incline to think that a decree between co-defendants, though both citizens of Virginia, may be made in this court. The result of these views is, that the motion is overruled.