LITTLE
ROCK,
July, 1837.

DUGAN
vs.
J. & H.
CURETON

DUGAN *against* J. & H. CURETON.

APPEAL *from Washington Circuit Court.*

A misrepresentation by the seller to the buyer of the advantages to result from the purchase, however contrary to good faith and sound morals, cannot form the basis of any suit, either at law or in equity.

It is not every misrepresentation which will avoid a contract upon the ground of fraud, if it be of such a nature that the other party had no right to place reliance on it, and it was his own folly to give credence to it.

The common language of puffing and commendation of commodities, is not such a fraud as will avoid a contract.

The question of damages is purely legal, and parties cannot come into chancery to have their unliquidated damages assessed and set off against a judgment at law.

When courts of chancery have once taken jurisdiction of a case for one purpose, they will generally retain the cause until the whole subject is disposed of, but the primary and original object of the suit must be one clearly within their jurisdiction: nor will they even then always retain the bill; as where the allegation which gives the jurisdiction not being sustained by the proof on the hearing, the remedy sought appears to be complete at law.

A failure to perform a contract which formed part of the consideration for the payment of money, and was to be performed several months after the making of the contract, cannot, without some concurring equity, constitute a ground of relief against the payment, in chancery.

A party will not be aided after a trial at law, unless he can impeach the justice of the verdict or report, by facts or on grounds of which he could not have availed himself, or was prevented from doing it by fraud, accident, or the act of the opposite party, unmixed with negligence or fault on his part.

*John* and *Henry Cureton* filed their bill in chancery in the Washington Circuit Court, and set up a state of case, briefly, as follows:

That *Dugan*, having been engaged in mercantile business, and having on hand a remnant of goods, persuaded the appellees to purchase the remnant, upon his assurance that he would, the next spring, go to New Orleans and there purchase for them goods to the amount of three thousand dollars, to make their assortment complete, and deliver the same to them in Washington county, charging them but 12½ per cent. advance on the cost and charges of such goods. That the appellees were farmers, had never traded to any distant city for goods, were unknown and had no credit abroad, and therefore required the aforesaid assurance, and made the same an express condition, before they would agree to purchase his remnant of goods. That they paid part of the price of said remnant in money, and executed their notes for the remainder, at the same time calling witnesses to take notice that the notes were executed upon the express condition that *Dugan* should make their assortment complete by the purchase agreed upon.

LITTLE ROCK, July, 1837.

DUGAN
vs.
J. & H. CURETON

The notes so executed were three of $800 each, and one for $780. Before the notes became due, *Dugan* called on them for all the money they could spare, and a bill of such goods as they wanted, stating that he was about starting to New Orleans, and wanted the money to aid in purchasing the goods. That they thereupon advanced him between four and six hundred dollars, before said notes were due, and have since paid him $150 or $200 on said notes. That in consequence of this arrangement, and confiding in the promises of said *Dugan*, they declined cultivating their farm, and turned their attention wholly to the preparation for receiving and selling such goods. That finally, late in the season, and when they had no possible chance for getting goods themselves, and when it was too late to raise a crop, *Dugan* refused to go to New Orleans, and they were obliged to go on and sell the remnant at a great sacrifice and on credit; and that remnants and articles of cutlery, &c., unsaleable, were left on hand to the amount of $300, which they tender to be disposed of as the court should direct. That, laying aside their own time, labor, and expense, they have not realized any thing like cost out of said remnants. That had *Dugan* complied with his promise, they would, by uniting the goods so to have been purchased, with the remnant aforesaid, have cleared at least one thousand dollars by the sale of them. That *Dugan* had obtained judgment against them for $1750 debt and $148 14 damages—and praying an injunction—which was granted as to $1200, and refused as to the residue of the judgment.

The answer of *Dugan* denied positively all the equity and every material allegation of the bill; and insisted that the goods which he sold them were worth more at the time of the sale, at the wholesale prices in said county, than the price he sold for.

No motion was made to dissolve the injunction. The cause was regularly set down for hearing, on the bill, answer, exhibits and depositions, and the court below decided that the appellees relied upon unliquidated damages, if any, and a jury came to assess those damages. The damages sustained by the appellees by reason of the premises, were by the jury assessed to $1500; and the court decreed that the injunction for $1200 should be perpetual, and gave judgment against *Dugan* for the remaining $300 and costs.

The errors assigned were as follows:

1st, Granting the injunction.

2d, Overruling a motion to dissolve the injunction.

3d, That the order for, and the writ of injunction, were for a sum different from that for which the injunction was prayed in the bill.

4th, That the court ordered a jury to assess the unliquidated dam-ages, and that they were assessed as an offset to a judgment at law.

5th, Allowing the said unliquidated damages as an offset, and de-creeing accordingly.

6th, That no issue was made up for the jury to try.

7th, That the court overruled the appellant's motion to set aside the order for such jury to come.

8th, That the court overruled his motion to set aside the verdict.

9th, That the court admitted parole evidence to contradict, vary, and subvert a written contract.

10th, Because the court relieved against the judgment at law when no defence had been made at law, and no reason assigned for not doing so.

11th, That the remedy of the appellees was at law and not in equity.

12th, That the court released the appellees from paying the pur-chase money of the goods, without any rescission of the contract or return of the goods by them.

13th, Same in substance as the 11th.

14th, That the decree should have been for the appellant.

TAYLOR, for the appellant: The bill is founded upon mere matter of legal cognizance, and ought to have been dismissed. 10 *Ves. Jr.* 159; 8 *Ves.* 163; 14 *Ves.* 468; 1 *Jacobs' Cases*, 576; 13 *Ves.* 133; 1 *Jacobs'*, 394; *Hovenden on Frauds*, 11; 1 *Com. Dig.* 64; 8 *Com. Dig.* 64.

Where there is an adequate remedy at law, especially with regard to *personal* contracts and *personal* property, a court of chancery never interferes, either to enforce performance, or to prevent a breach, or to assess damages. It is only, in such a case, when the legal remedy is precarious or inadequate, that the equity interferes. 13 *Ves.* 133; 8 *Ves.* 163; 4 *J. C. R.* 559; 5 *J. C. R.* 195; 1 *Chitty on Pl.* 852-3; 1 *Scho. & Lef.* 25.

If the party fails to make his defence at law, or his defence proves ineffectual at law, he can have no relief in equity. 1 *J. C. R.* 49, 98, 91, 320, 323, 367, 439, 432, 465.

A contract cannot rest partly in writing and partly in *parole;* con-sequently conditions cannot be annexed, by extrinsic parole evidence'

E'

LITTLE
ROCK,
July, 1837,

DUGAN
vs.
J. and H.
CURETON

to a promissory note, and still less to a writing obligatory, more especially after the debt created by it has passed into a judgment debt. 1 *Powell on Contr.* 259; 3 *Starkie on Ev.* 1008; 1 *Sch. & Lef.* 35; 1 *Ves. Jr.* 326.

A court of equity cannot take cognizance of any matter upon the vague suggestion, merely, that otherwise injustice would be done. Some distinct ground of equitable jurisdiction must be stated and put in issue. *Hov. on Fr.* 11; 8 *Com. Dig.* 65.

And the court which first has possession of it must determine it conclusively, even as to matter of fraud. 8 *Com. Dig.* 65; 9 *Wheaton* 592.

Unliquidated damages cannot be made a setoff, either against a note or a judgment. *Chitty on Bills*; 14 *Ves.* 369; 3 *J. C. R.* 357–8.

Where the whole of the equity is responded to or denied by the answer, the injunction ought to be dissolved. 1 *J. C. R.* 212.

WALKER and FOWLER, *contra:* 1st, No exceptions shall be taken, except upon points which "*have been expressly decided*" by the court below. *Acts of* 1836, p. 132, sec. 14. And this applies to cases in chancery as well as cases at law. *Ib.* p. 133, sec. 19.

2d, Appellant, in his assignment of errors, *assumes* the fact that many points were decided below which, by the record, were *not* decided; and *assumes* matters as appearing in the record, and assigns error thereon, when in fact they *have no existence in the record:* to all of which appellees insist that they shall be treated as nullities. Among which are the following, viz:

*1st and 2d Errors assigned.* No exceptions were taken below to the equity of the bill in any manner. *There was no demurrer.* The court *did not overrule* a motion to dissolve the injunction. The motion was filed, and then abandoned as hopeless: the appellant *answering* without a decision thereon, was a *waiver* of his motion. It is a general rule that a party who is to be damnified by irregularities and improper decisions, shall move their correction in the court below, or they will not be regarded in the court above. 2 *Bibb. Rep.* 167; 2 *Pirt. Dig.* 247, 256; 1 *Bibb. Rep.* 277, 526; *Hardin's Rep.* 304, 535, 559.

*3d Error assigned,* Is of like character. The order granting the injunction is perfectly regular. *Geyer's. Dig.* 232. Irregularities in the order, or in the writ, should have been corrected below, or at-

tempted to be corrected. The record shows neither. *Same authori-* <span></span>**LITTLE**
*ties as in the 1st and 2d assignments.* **ROCK,**
**July, 1837.**

4th, 5th, *and* 6th *Errors assigned,* Seem to be of a similar charac- **DUGAN**
ter, and all three touching one point alone. No *formal issue* of fact **vs.**
is necessary. *Gey. Dig.* 114. **J. and H.**
**CURETON**

Jury was properly called to assess damages, and properly assessed them. 1 *Bibb. Rep.* 338–9; 2 *Pirt. Dig.* 373, 375, 247; 5 *Little's Rep.* 51.

Jury was sworn to try proper issues; "matters of fact affirmed by one party and denied by the other." *Gey. Dig.* 114.

7th *Error assigned.* Court had no power to set aside the order made at the former term. The order was properly made; and if erroneous, appellant should have objected to it at the term in which it was made. His acquiescence was a *waiver* of irregularity, if any. *See authorities on 1st and 2d assignments.*

8th *Error assigned.* Court below did not overrule motion to set aside the verdict of the jury. The record shows that it was abandoned and *waived* by appellant, and that he suffered a *decree* to be entered without excepting to the verdict, or insisting upon his motion to set it aside. *Authorities on 1st and 2d Errors.*

If court had overruled the motion, there is no cause shown in said motion sufficient to set aside the verdict. In order to avail himself of any irregularities in the verdict, or any thing connected with it, or the issues upon which it was found, or the *insufficiency of the evidence,* appellant should have moved for a new trial, and set out all the *facts* upon the record by Bill of Exceptions. 1 *Bibb. Rep.* 340.

The motion, had it been acted on, shows no cause to set aside verdict; and as far as it refers to the record, it is contradicted by it. But it was not acted on, and is therefore a nullity.

A *fact* found by a jury, empannelled and sworn for that purpose, which finding has not been set aside, must be taken as conclusive. 2 *Bibb. Rep.* 169; 2 *Pirt. Dig.* 256; 1 *Bibb. Rep.* 340.

9th *Error assigned.* Parole testimony admitted was not " to contra-dict" " a written contract;" but in aid of it, to explain it, and was properly admissible.

10th *Error assigned.* No defence could have been made at law. The writings were under seal, and *fraud or failure of consideration* could not have been pleaded at law. Therefore no defence was necessary.

LITTLE
ROCK,
July, 1837.

DUGAN
vs.
J. and H.
CURETON

*11th Error assigned.* Court of Chancery had undoubted authority to *enjoin* the judgment at law; and when jurisdiction once attaches, court of equity will hold it until all matters connected with it are settled, whether they would *per se* have been the subject of the Chancellor's jurisdiction originally, or not.    3 *Bl. Com.* 438 *et seq.;* 1 *Bibb. Rep.* 340.

*12th Error assigned.* There was no necessity for rescinding the contract; appellees sustained all the damages allowed them, over and above the depreciated prices for which they were compelled to dispose of the damaged goods.

*13th Error assigned,* Is fully answered under the 11th and others preceding it.    And the 14th is fully responded to by the whole record.

Additional authorities.    1 *Pirt. Dig.* 259, 323, 329, 332;   1 *Bibb. Rep.* 278, 303; 2 *Pirt. Dig.* 247, 109, 255–6, 469, 373, 375; 1 *Marshall,* 419; 5 *Littell,* 51, 221.

Ringo, *Ch. J.,* delivered the opinion of the Court:  The facts in the case, as set forth in the bill, are to the following effect.   The appellant having a quantity of merchandize in his store at Cane Hill, in Washington county, urged the appellees to purchase them, which at first they declined doing, on account of the assortment being broken and consisting of such articles as were unsaleable;  but the appellant representing to them the advantages which would result from the purchase, they finally consented and agreed to give him his price for the goods, upon his assurance that he would go to the city of New Orleans the next spring and procure and deliver to them in Washington county, $3,000 worth of such articles as would make their assortment complete when united with the remnants purchased of him: only charging them 12½ per cent. on the Orleans cost and carriage.

The appellees were farmers in Washington county, and had never traded to New Orleans or any distant city where merchants supply themselves with goods; were unknown and had no credit abroad, and for the purpose of enabling themselves to set up business acceded to the offers made them by the appellant, and did agree to give him his price for said remnant of goods, upon the express condition that he would purchase in New Orleans and deliver the amount of goods aforesaid, to make their assortment complete; and thereupon executed to said appellant their three several notes in writing or writings obli-

LITTLE
ROCK,
July, 1837.

DUGAN
vs.
J. and H.
CURETON

gatory; two for $800 each, and one for $786, payable six months after date, and paid in hand some three or four hundred dollars, making in all about $2700. At the time the notes were executed the appellees called witnesses to bear testimony that they were given upon the express condition that the appellant would make the assortment complete by the purchase of said goods in New Orleans.

The appellant, long before the notes become due, called on the appellees for all the money they could spare, and wrote to them requesting them to make out a bill of such goods as they wanted, stating that he was on the eve of starting to New Orleans, and wanted the money to aid in purchasing the goods. Whereupon they advanced him between four and six hundred dollars for that purpose, which was paid before said notes were due, and placed to their credit on them; and they have since paid him $150 or $200 on said notes. The appellees confiding in the honesty and integrity of the appellant, declined cultivating a farm to any extent, and gave their whole attention to the preparation for receiving and selling the said expected new assortment of goods to be furnished by the appellant, and to the sale of the remnants on hand bought of him as abovementioned.

The appellees repeatedly urged the appellant to purchase for them the goods promised, representing their dependant situation, and he as repeatedly promised to comply; but finally, late in the season, when the appellees had no possible chance of getting goods elsewhere, and when it was too late to raise a crop, informed them that he was not going to New Orleans, and could not comply with his promise. Being thus left with the remnants of unsalable goods on hand, they devoted their whole attention to the sale of them, and were compelled to sell many on credit to any and every person who would buy, and were thereby forced to make many bad debts. That for cash or good credit, the articles were generally sold for less than they would have been if they had been assorted; and that many articles of cutlery, and remnants to a considerable amount, say $300, were on hand and unsalable, and which they tender to be disposed of as the court may direct.

That, independent of their own time and expenses, the appellees have not made any thing like cost out of said remnants, and that with the additional supply of goods promised by the appellant, with less labor and expense, they could have realized a very handsome profit, and sold the remnants much faster and to better advantage; and that

LITTLE
ROCK,
July, 1837.

DUGAN
vs.
J. and H.
CURETON

but for the fraud and neglect of said appellant, they should have cleared $1000 on the goods sold and those to have been purchased and delivered by him.    That said appellant has sued and recovered a judgment at law against them, on said notes, for $1750 debt, and $148 14 damages, and threatens to collect the same by execution. The bill prays an injunction which was granted as to $1200 of said judgment, and refused as to the residue.

The answer of the appellant denies positively all the equity and every material allegation of the bill; and insists that the goods sold by him to the appellees were, at the time of the sale, worth more at the wholesale prices in Washington county, than he sold them for to said appellees.

No motion was made to dissolve the injunction: and although a motion for that purpose is copied in the transcript, it does not appear to have been noted of record, or in any manner noticed by the Circuit Court, and is not even endorsed as filed.    We cannot, therefore, consider it as any part of the record.

The cause appears to have been regularly set down for final hearing, on the bill, answer, exhibits, and depositions.    Upon the hearing the court decided that the complainants relied upon unliquidated damages, if any, and therefore ordered that a Jury come at the next term to enquire what damages the complainants had sustained, if any, and continued the cause.    The record shows that at a subsequent term a jury was empannelled and sworn to enquire as to the loss and damage which the complainants sustained by reason of preparations for merchandizing, neglecting to cultivate their farms and attend to the ordinary pursuits of farming, and the loss and damages which they sustained by reason of their not being furnished with $3000 worth of assorted goods at New Orleans prices, deducting 12½ per cent. upon cost and carriage, and a true verdict to render according to evidence.    The first jury sworn disagreed, and a juror being withdrawn, a second jury was called and sworn as aforesaid, which assessed the appellees' damages by reason of the premises to $1500; and thereupon the Circuit Court proceeded to pronounce a final decree. That the injunction for $1200, should be perpetual and absolute, and that the appellees should recover of the appellant $300, the residue of the damages assessed as aforesaid, and have execution therefor; and that the appellant should pay the costs of suit.

To reverse which this appeal is prosecuted.    Many errors have

been assigned which it will not be necessary to notice. The 11th, 12th, 13th, and 14th, may be considered together. The 11th assignment asserts, that said Circuit Court took cognizance of a mere personal contract for the assessment of unliquidated damages, when (if any such contract existed) the said appellees had their full, complete, and adequate remedy at law. The 12th assignment of error asserts that the Circuit Court exonerated said appellees from the payment of the purchase money for the goods mentioned in their bill, purchased by them from said appellant, without the contract of purchase having been rescinded by said appellees, or the goods returned to said appellant. The 13th assignment of error is substantially the same as the 11th, asserting that the bill contained only matter cognizable in a court of law, without any thing to give jurisdiction to a court of equity. The 14th assignment of error is general: that the decree is for the appellees, whereas it ought to have been for the appellant, and the bill dismissed. .

It is contended on the part of the appellant, that a court of equity can exercise no jurisdiction in the case, because the appellees have full, complete, and adequate remedy at law. The several allegations of the bill have been reviewed, and it is contended that each of them is examinable at law and ought to be decided in precisely the same manner in both courts. If, upon the sale of the remnants, it was a part of the original contract that the appellant should furnish the appellees a stock of $3000 worth of goods the ensuing spring, to be purchased by him in New Orleans, and delivered in Washington county at 12½ per cent. on New Orleans cost and carriage, his failure to supply the goods would subject him to an action at law in which the appellees might recover damages equal to the loss suffered by reason of his failure to perform the contract, and they could do no more in equity: but it would not be a ground for a rescission of the contract, either at law or equity.

If it was not part of the original contract, but merely an undertaking without consideration, no right accrued therefrom to the appellees either at law or in equity. If the contract, as stated in the bill, had been reduced to writing and duly executed and sealed by the appellant, the appellees might be compensated in damages in an action at law upon the breach, and could have nothing more in equity; and although the contract, covenant, or promise, might comprise a part of the consideration for the $2700 paid, or agreed to be paid, by the

---

*(margin)* LITTLE ROCK, July, 1837.

DUGAN
vs.
J. & H. CURETON

LITTLE
ROCK,
July, 1837.

DUGAN
vs.
J. & H.
CURETON
appellees to the appellant, (as the appellees insist it does,) still the undertakings, though mutual, would be independent, and a breach by either party would form the basis of an action at law in favor of the other party; but such breach could not alone constitute the ground of equity jurisdiction in favor of either party. The facts alleged are all examinable at law, and a court of law is as capable of deciding on them as a court of equity. In such case the existence of some fact which disables the party having the law in his favor from bringing his case fully and fairly before a court of law, has been generally supposed to be indispensable to the jurisdiction of a court of equity. Some defect of testimony, some disability, which a court of law cannot remove, is usually alleged as a motive for coming into a court of equity. But in this case the bill alleges nothing which can prevent a court of law from exercising its full judgment. No defect of testimony is alleged, but it is shown by the bill that witnesses to the contract were called to bear testimony to it when it was entered into. No discovery is required, no insolvency intimated, or other cause stated why a recovery at law could not be obtained and made available. No accident suggested, no appeal made to the conscience of the appellant, and lastly that there is no distinct ground of equity jurisdiction whatever set forth in the bill.

The argument on the other side is, that the appellees are wholly without remedy at law: that they could make no legal defence to the action at law, because it was founded on writings obligatory: that the Court of Chancery has undoubted authority to enjoin the judgment at law, and when jurisdiction once attaches, the court will retain the case until all matters connected with it are settled, whether they would *per se* have been the subject of chancery jurisdiction or not. That all irregularities, not objected to in the court below, are to be considered by this court as waived. That this court is not at liberty to review any points in the cause which were not expressly decided by the Circuit Court: and lastly, that the bill expressly charges the appellant with fraud in the premises.

The allegation of fraud is not distinctly and positively made in the bill, but if it was so made, it is positively denied by the answer, and is not supported by the proof. It is not alleged that there was any misrepresentation or concealment on the part of the appellant, at or before the sale, either in relation to the quantity, quality, or description of the goods. and it is proved that they had been in the

possession of the appellees for several months previous to the sale, and that they were placed in their possession to sell on commission. They therefore must have known the quantity, quality, and value of the goods as well, if not better, than the appellant. Consequently, there can be no pretence of fraud or imposition in the sale. And if the appellant did misrepresent the advantages to result to the appellees from the purchase, that was not a matter of which he was under any legal obligation to speak the truth, and however contrary to good faith and sound morals it may be, cannot form the basis of any suit either at law or in equity. It has been repeatedly held that it is not every wilful misrepresentation, even of a fact, which will avoid a contract upon the ground of fraud, if it be of such a nature that the other party had no right to place reliance on it, and it was his own folly to give credence to it: for courts of equity like courts of law, do not aid parties who will not use their own sense and discretion upon matters of this sort.

STORY, in his treatise on equity jurispudence, says: " To this class " may be referred the common language of puffing and commendation "of commodities, which, however reprehensible in morals, as gross " exaggerations or departures from truth, are nevertheless not treated " as frauds which will avoid contracts. In such cases the other party " is bound, and indeed is understood to exercise his own judgment, if " the matter is equally open to the observation, examination, and skill "of both. To such cases the maxim applies *simplex commendatio non* "*obligat.* The seller represents the qualities or value of the commodi- "ty and leaves them to the judgment of the buyer." *Story's Equity Jurispudence* p. 208, 211. The same principle is stated in *Kent's Commentaries*, 2d vol., p. 379.

. In this case the appellees do not seek to rescind or avoid the contract of sale, but expressly affirm it, and ask a compensation in damages for the alleged breach of the contract on the part of the appellant, without showing any obstacle whatsoever to their recovery in a court of law, or even alleging that they will suffer a great or irreparable loss or injury by being obliged to resort to a court of law to recover their damages. The question of damages is purely legal, and if the appellees are warranted in coming into a court of chancery to have their unliquidated damages assessed and set off against the appellant's judgment at law; the like resort may be had to the courts of equity in every case of mutual and independent covenants, especially if one

F

LITTLE ROCK, July, 1837.

DUGAN vs. J. & H. CURETON

of the parties should sue and recover a judgment at law which the adverse party might pray the court to enjoin and setoff with his damages sustained by reason of the breach of covenant or agreement in his favor, and thus the jurisdiction in that class of cases might be effectually taken from the courts of law and transferred to the courts of equity, contrary to what is understood to be the well defined limits of the jurisdiction of courts of equity. And the attempt of the appellees to consider the failure of the appellant to keep and perform his contract or promise, as a fraud enabling the Court of Chancery to take jurisdiction of the subject for any purpose whatever, cannot be sustained upon any principle recognized by courts of equity. It is said that the court had an undeniable right to grant the injunction; and having taken cognizance of the case for that purpose might retain it until all matters connected with it were settled. This position, as stated, is not strictly correct. The rule established by courts of equity is, that when they have once taken jurisdiction of a case for one purpose, they will generally retain the case until the whole subject is disposed of; but the primary and original object of the suit must be one clearly within its jurisdiction, and even then the court will not always retain the bill. In the case of *Graves and Barnewell* vs. *the Boston Marine Insurance Company*, the bill was filed to obtain relief against an alleged mistake by omitting to insert the name of *Barnewell* in the policy, and also to charge the Insurance Company upon the policy of insurance effected by them. The answer denies that there was any mistake, and the evidence did not satisfactorily prove it. Upon the final hearing the court refused to reform the contract or grant the relief sought by the bill, and dismissed the bill upon the ground that *Barnewell* could have no relief on the policy either at law or in equity, and *Graves* had an adequate remedy at law on the policy to the extent of his interest; and the decree was affirmed in the Supreme Court of the United States. 1 *Peters' Con. Reports* 435.

In that case the bill was retained solely upon the ground of the alleged mistake in the policy, until a final hearing, when that allegation not being sustained by the proof, the court refused to retain the suit for the purpose of charging the Insurance Company upon the policy—the remedy being complete at law—and for that cause alone the bill was dismissed.

In the case before us, no specific ground of equity is alleged in the bill; no accident or mistake is charged; no specific performance of

any contract is sought to be enforced; no want of consideration is shown; no irreparable mischief or injury is to be prevented by the injunction; no peculiar hardship is shown to exist; no trust is to be enforced, or complicated accounts settled. The appellees have re- ceived the whole consideration for which they contracted. The stock received, together with the covenant or promise of the appellant to furnish an additional supply the ensuing spring, constituted the entire consideration for which they consented to pay $2700. The appellant's undertaking was to be performed several months after the date of the contract, and the appellees relied solely upon his parole undertaking (an undertaking which, although materially varied by the answer, is substantially proved by the evidence) and if they failed to take from him a binding obligation or promise to perform the contract on his part, it was their own fault. There was no mistake, misrepresentation, or concealment about it; the contract is just what all the parties to it intended it should be; and if the appellant has failed to perform his part in the manner stipulated, it is nothing more than the ordinary breach of a contract to pay money or to do, or refrain from doing, any other specified act, and cannot, without some concurring equity, constitute a ground of relief in a court of equity. The appellees treat the promise of *Dugan* as binding upon him, thereby affirming the whole contract, and considering themselves damnified by his breach of promise, pray an injunction, to restrain him from enforcing his judgment at law against them. This practice is without precedent, and is contrary to the well established principle that uncertain damages arising on a breach of contract, cannot be made the subject of a setoff, either in a court of law or equity. The authorities fully sustain these principles.

In the case of *Duncan* vs. *Lyon*, 3 John. Ch. Rep. 357, 358, which was a bill filed for the purpose of obtaining a discovery and setoff as well as an injunction to stay the proceedings at law in a suit founded on an agreement under seal containing mutual covenants for the furnishing of timber, &c., by the complainant, which the defendant was to take to Montreal and Quebec, &c., and to pay the complainant half the proceeds, &c., and furnish an account, &c., an injunction was obtained, but not until an award had been made by arbitrators in favor of the plaintiff at law. CHANCELLOR KENT, after saying that the bill was filed too late for a discovery, declares that "it is a settled principle that a party will not be aided after a trial at law, unless he can

LITTLE
ROCK;
July, 1837.

DUGAN
vs.
J. and H.
CURETON

impeach the justice of the verdict, or report, by facts or on grounds of which he could not have availed himself, or was prevented from doing so by fraud or accident, or the acts of the opposite party, unmixed with negligence or fault on his part. This point has been so often ruled that it cannot be necessary or expedient to discuss it again, and it is one by which I mean to be governed."

Having disposed of the case as to the discovery sought, he proceeds to examine the claim to setoff, and says: " The matters of account stated in the bill were not proper subjects of setoff in the action of covenant, and if the discovery had been obtained in season, I presume it would not have aided the defence. The breaches assigned in the action at law were that the plaintiff had refused to perform his part of the covenant in furnishing lumber and provisions, &c., and the demand at law was in the nature of a redress for a wrong or injury committed, and not for a debt due. It rested entirely on uncertain and unliquidated damages. There cannot be a setoff even of a debt, against the demand of the plaintiff, unless that demand be of such a nature that it could be setoff by a debt, if it existed, in him. There must be mutual debts: this is the settled doctrine in the courts of law. The same rule prevails, also, in courts of equity. The practice may perhaps be more liberal in respect to *mutual* credits, but there is no case in which a setoff has been allowed, where the demand was for uncertain damages arising on a breach of covenant. The courts of law and equity follow the same general doctrine on the subject of setoff. If the recovery at law is to be taken under the present motion as a just recovery, then it would be unreasonable to delay the defendant until the accounts between the parties can be taken and stated, and the balance struck in this court. One judgment may be setoff against another, but here is a demand on one side raised to a debt certain, by a legal assessment, and an uncertain claim on the other, depending on a settlement of accounts. These accounts were not the subject of setoff, and there is no case to warrant me to stay execution on the demand until the other is settled and in a condition to be setoff."

The principles asserted in that case are in point in this, and the promise being merely *parole*, cannot vary the case. The damages are equally uncertain whether they arise upon the breach of a parole promise or covenant; and the uncertainty of the claim is the principal ground of its exclusion. The promise alleged is not for the

payment of money, but for the performance of certain acts by the appellant, and the claim to damages results from his nonperformance of those acts. This claim is as uncertain, at least, as if it rested upon a breach of covenant to perform the same acts. It is no debt due and cannot therefore be made the subject of setoff in either a court of law or equity.

The court below decreed a setoff of $1200 of the damages assessed by the jury, and a perpetual injunction against the appellant's judgment at law, and awarded execution against the appellant for $300, the residue of said damages.

In pronouncing the decree, the Circuit Court expressly decided upon and in favor of the equity of the appellees' claim, as well as their right to enforce that claim in a court of chancery. And as the cause must be decided upon the ground of there being no equity upon the face of the bill, and no facts therein to authorize or sustain the final decree pronounced in the cause, we deem it unnecessary to notice the other errors assigned, or to decide how far the court is at liberty to correct errors, which do not appear to have been expressly decided upon by the Circuit Court, or to declare under what circumstances the same will be considered as waived.

Wherefore, upon the reasons above stated, it is the opinion of this court that there is no equity in the bill of complainant, and that the Circuit Court, sitting as a court of chancery, erred in granting relief thereupon to the appellees and perpetually enjoining the appellant from proceeding upon his judgment at law. The decree, therefore, must be reversed, annulled, and set aside, the injunction dissolved, with damages, according to law, and the bill dismissed with costs.