STORTHZ *v.* ARNOLD.

ARNOLD *v.* STORTHZ.

Opinion delivered January 28, 1905.

1.  FRAUD—INADEQUACY OF PRICE.—A purchase of land by a white man from two ignorant negro girls will not be set aside for inadequacy of price because he paid only $300, when there was evidence estimating its·value at $650, as the price paid was not shockingly disproportionate, in view of the fact that such estimate was largely speculative, being based upon the supposition that the land contained mineral. (Page 70.)

2.  SAME—CONCEALMENT.—A purchase of land by a white·man from two ignorant negro girls of 16 and 18 years, respectively, will not be set aside because he concealed from them the fact that he believed that there was mineral on the land, if he paid a fair price for the land, and the development of mineral in the vicinity was matter of common knowledge; the sale having been participated in and approved by the adult relatives of the vendors. (Page 71.)

Appeals from Saline Chancery Court.

LELAND LEATHERMAN, Chancellor.

Reversal in one case; affirmance in the other.

Mary and Bettie Arnold, aged, respectively, 18 and 16 years, brought separate suits against L. Storthz, alleging substantially the same state of case. They averred that they were part owners of a tract of land; that they were inexperienced and ignorant; that defendant, knowing that the land contained valuable mineral deposits known as "bauxite," fraudulently concealed such fact from plaintiffs, and procured their interests by paying therefor only $150 each, fraudulently representing to them that the land was of little value, whereas it was worth ten times the sum paid. They prayed for a rescission of the contract. Mary Arnold tendered the purchase money. Defendant's answer denied all allegations of fraud.

In the case of Mary Arnold, the court at the hearing dismissed the complaint; in the other case, the deed of Bettie Arnold to Storthz was cancelled. Both cases were appealed. The facts sufficiently appear in the opinion.

*Eben W. Kimball,* for L. Storthz.

Judgments can not be collaterally attacked. 79 S. W. 1062. There was no proof of tender of the purchase money, and the suit can not be sustained. 1 Whar. Contr. § 285. There were no fiduciary relations between the parties, and appellant was guilty of no fraud. Whar. Contr. § § 25, 252; 4 Mass. 502; 44 Pa. St. 9; 16 Mich. 40; 23 Ind. 567; 14 Ia. 400; 24 Ia. 394. Inadequacy of price is no ground for setting aside a sale of lands or chattels. Fry, Spec. Perf. § 279.

*Murphy, Mehaffy & Lewis,* for Arnolds.

Upon return of purchase money, the land should have been reconveyed. 2 Wheat. 178; 2 Paige, 390; 4 Am. Dec. 677; 51 Am. Dec. 717; 44 Am. Dec. 448; Warvelle, Vendors, 995; Kerr, Fraud and Mistake, 97. No tender of deed or money as a preliminary step was necessary to maintain the suit. 44 Ark. 192; 38 Ark. 133; 11 Mont. 138; 91 Mich. 429; 75 Ia. 710.

HILL, C. J. Mary and Bettie Arnold, ignorant negro girls, aged, respectively, 18 and 16 years, owned, with their infant brother, a tract of 160 acres of land in Saline County. It had come to them through their deceased father who had lived upon it at one time. A small part of it had once been in cultivation. The improvements were of little value, and the taxes unpaid, and the time for redeeming from a tax sale nearing expiration. Such was the condition when one Jones, a man of their race and an attorney, called to see them at the home of their half sister, with whom they lived, in the City of Little Rock. He told them of the imminent danger of the land being lost on account of nonpayment of taxes, and, after attempting to frighten them about the land, offered $25 for the interest of the elder sister. This was declined, and negotiations continued, Jones raising his offers. Finally, he brought about an interview between them and Storthz, whom he claimed to represent. He told them Storthz would not give over $300 for the two interests, if that, and that he would get mad and leave. Storthz came, offered $50 each, which was declined, and he got mad and left, as predicted. He came back in a few minutes, and said that he would give $300 for the two interests, because the girls were orphans, but that

the land was not worth it; that it would not sprout peas. The offer was accepted, $150 paid the adult sister, and in a few days an application was made to Pulaski Circuit Court for the removal of the disabilities of Bettie, at which hearing her relatives appeared and some others. The order was made removing her disabilities for the purpose of making the sale, which was then consummated, and the money paid. Storthz paid the witnesses and relatives who appeared at said hearing small sums for their services in attending same.

These suits were brought to set aside the conveyance as fraudulent, in that the lands contained valuable bauxite deposits, and that Storthz knew this, and the girls were ignorant of it, and he knowingly imposed on their ignorance. The suits are similar, except in Bettie's case there was a tender of the purchase price. There is a conflict in the evidence as to the statements and conduct of Storthz when the tender was made, but it is not considered material.

The evidence is conflicting as to whether there are bauxite deposits on the land, and consequently as to its value. It is clear that the price is a good one, if the land is not valuable for mineral deposits, and their presence is a matter of speculation and conjecture. There is no development upon this land, and witnesses differ as to the surface indications, and the effect and certainty of surface indications. Mineral rights in this vicinity have sold in many instances at $1 per acre.

The principal witness for the girls has offered $1,100 for the tract, or $766.66 for these two interests, or twice the amount paid by Storthz. This was some time after the sale to Storthz, and this witness places the value at the time Storthz bought at $800 for the entire interest, which is $350 more than the basis upon which Storthz bought. From the standpoint of the witnesses for the girls, the price is not so shockingly disproportionate to the value, even this speculative value, as to call for the interposition of equity. On the other hand, the evidence for Storthz shows his price to be a fair one, and just such price as other parties in that vicinity owning similar lands were receiving, on an average. "Fraud without damage, or damage without fraud, will not do." *Carvill* v. *Jacks*, 43 Ark. 455. To the same effect: *Ark. & La. Ry.* v. *Smith*, 53 Ark. 275; *Hutchinson* v. *Gorman*, 71 Ark. 305.

It is evident that Storthz wanted this land for the bauxite deposits which he believed existed in it, and that he was buying it for the mineral value of it. He says that he bought in order to put this in with some other tracts in that vicinity, which he was bargaining to sell to a bauxite development company. His purchase was not secret; all the nearest relatives of the girls participated in the deal, and there was no concealment other than his evident belief that it had value as bauxite lands, or that he could induce this company to so believe. Was such conduct sufficient to avoid his purchase, even if the value was grossly inadequate (which, as seen, is doubtful)? In *Dugan* v. *Cureton,* 1 Ark. 31, Chief Justice Ringo said: "It has been repeatedly held that it is not every willful misrepresentation, even of a fact, which will avoid a contract upon the ground of fraud, if it be of such a nature that the other party had no right to place reliance on it, and it was his own folly to give credence to it; for courts of equity, like courts of law, do not aid parties who will not use their own sense and discretion upon matters of this sort.".

Mr. Justice Walker, in *Yeates* v. *Pryor,* 11 Ark. 58, thus stated the rule: "The misrepresentation, in order to affect the validity of the contract, must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other on account of his superior information and knowledge in regard to the subject of the contract; for if the means of information are alike accessible to both, so that, with ordinary prudence or vigilance, the parties might respectively rely upon their own judgment, they must have been presumed to have done so; or, if they have not informed themselves, must abide the consequences of their own inattention and carelessness."

These principles have often been announced, and these cases followed, in subsequent decisions of this court. While these girls were ignorant and young, yet they were surrounded by their grown relatives, who participated in, and evidently approved of, the sales.

The bauxite development in the vicinity of this land was evidently known to all of them; if not, it was solely on account of their own inattention and carelessness. If they gave

credence to Storthz's assertion that he was buying of them land that "would not sprout peas" because they were orphans, their folly must pay the penalty. The evidence shows, however, that they refused the early offers, and stood out for the price they wanted, and finally got it. They do not seem to have been carried away with Storthz's representations, and stiffly refused his various offers, even to the extent of making him mad and causing him to leave them, which seems to have been characteristic of his trading. On the whole case, the court is of opinion that the sales must stand.

The judgment in *Storthz* v. *Arnold*, No 5087, is reversed, and the cause remanded, with directions to dismiss the complaint; and the judgment in *Arnold* v. *Storthz,* No. 5086, is affirmed.

WOOD, J., dissenting.