CUNNINGHAM *v.* LOVE.

4-6333                                    150 S. W. 2d 217

Opinion delivered April 28, 1941.

*C. L. Farish, J. E. Brazil* and *J. G. Moore,* for appellant.

*W. P. Strait,* for appellee.

HUMPHREYS, J. Mrs. M. J. Cunningham, who owned lot 2 in block 20 in Mooses' Addition to the town of Morrilton, Arkansas, on the 23rd day of February, 1937, executed a warranty deed to said property and acknowledged same in accordance with the statutes of the state and delivered same to Mrs. Bertha Love, the appellee, for and in consideration of the assumption by Mrs. Bertha Love of the debt due the Home Owners' Loan Corporation in the approximate sum of $875 and also the assumption of all taxes, improvement district, state and county now past due, and as a further consideration, that said Mrs. M. J. Cunningham was to have the sole use and enjoyment of the property during her natural life, and have complete control of the property as her own home, during her natural life.

This deed was recorded in Record Book 45, p. 540, in Conway county, on the 25th day of February, 1937.

On March 1, 1940, Mrs. M. J. Cunningham brought suit in the chancery court of Conway county, Arkansas, to cancel the deed on two grounds; first, because the consideration purported to have been paid for said lands was so small as to raise the presumption of fraud, and, second, that through mutual mistake, or mistake of the scrivener of said deed, or through fraud and connivance on appellee's part, Mrs. M. J. Cunningham was induced to sign the deed without a meeting of minds between herself and appellee.

She alleged in the complaint that she entered into a contract to the effect that appellee was to pay the HOLC loan or mortgage and all delinquent taxes against the property including the state, county and improvement district taxes and to support her as long as she lives and leave her in possession of her property during her life and that when she died the property should be sold and appellee reimbursed for her expenditures out of the proceeds of the sale thereof and that the remainder should be paid to the local Presbyterian church.

On March 14, 1940, appellee filed an answer denying all the material allegations in the complaint.

On April 17, 1940, Mrs. Mayme Montgomery McDaniel filed an intervention that she nursed Mrs. Cun-

ningham for a period of forty-six weeks under an agreement with her that she would pay her $10 a week for her services out of the proceeds of the sale of her home when same should be sold and that under said agreement she was entitled to $460 for services she rendered Mrs. M. J. Cunningham pursuant to the agreement and alleged that the conveyance by Mrs. M. J. Cunningham to appellee was a fraud upon her rights as a creditor.

Appellee filed an answer denying the right of the intervener to any interest in said real estate or that she had any lien upon said real estate for the payment of the services which she rendered Mrs. M. J. Cunningham.

Mrs. M. J. Cunningham died on or about the 21st day of March, 1940, and the cause was revived in the name of George Leslie Cunningham and James Cunningham, grandchildren and the only heirs-at-law of Mrs. M. J. Cunningham.

On the 16th day of August, 1940, the cause was submitted to the court upon the pleadings and the testimony pro and con responsive to the issues involved who rendered a decree dismissing appellants' complaint including the intervention of Mrs. McDaniel for the want of equity, from which is this appeal.

(1) We have read the testimony very carefully and find no evidence which would warrant the cancellation of the deed on the ground of inadequacy of consideration. The evidence reflects, without dispute, that appellee has paid upon the HOLC mortgage and the state, county and improvement taxes $1,472.77 in actual cash and still owes a balance to the HOLC in the sum of $653.76 principal drawing a monthly interest of $2.43. In other words that the total amount paid and to be paid on the property is $2,126.53. There is much testimony in the record as to the value of the property now and at the time Mrs. M. J. Cunningham conveyed it to the appellee. At one time the property was very valuable, worth perhaps over $10,000, but it is an old home, built many years ago and we think the weight of the evidence clearly shows that a fee simple unincumbered title to the

property could not have been sold for more than about $2,500 when the deed was executed. This did not take into account the fact that Mrs. M. J. Cunningham reserved in the deed a life estate with full control. The undisputed evidence is that at the time she made the deed she had an expectancy of about ten years.

While various witnesses put various values upon the property both at the time the deed was executed and at the time they were testifying a very potent circumstance appears in the record that convinces us the property was not worth perhaps over $2,500 at the time the deed was executed. The potent fact referred to was that the Dowdle home on the other corner of the block, which was a larger and better house and with much vacant property around it, sold in 1938 for $2,500 and the owner thereof paid a commission upon the sale out of that amount.

This court said in the case of *McDonald* v. *Smith,* 95 Ark. 523, 130 S. W. 515, that: "The rule is well settled that before inadequacy of price will be considered a sufficient ground for cancelling a conveyance it must be 'so gross that it shocks the conscience.' 2 Pomeroy, Eq. Jur., § 927; 6 Cyc. 286; *Storthz* v. *Arnold,* 74 Ark. 68, 84 S. W. 1036." There is no such inadequacy of consideration in the instant case that would shock anyone's conscience.

(2) At the time the deed was executed by Mrs. Cunningham to appellee she was behind on her payments to the HOLC to such an extent that they were threatening immediate foreclosure against her. She had no way to keep up the payments and no way to pay the delinquent taxes against the property including state, county and improvement district taxes. Mrs. Cunningham was very anxious to remain in her home where she had always lived. She had conveyed a bottom farm to George Leslie Cunningham and James Cunningham some time prior to the time she made the deed to appellee so she had no property with which to pay the mortgage off her home. She consulted Dr. S. J. Patterson, who had been pastor of the Presbyterian church for perhaps seven-

teen years and of which church she was a member, to see whether the church would be willing to take care of her and assume all the indebtedness against the property and take a deed thereto reserving a life estate in her and at her death have the remaining equity therein. Dr. Patterson told her he did not think the Presbyterian church would enter into that kind or character of agreement. According to his testimony, she then requested him to see if she could not convey the property to some third party and reserve a life estate therein who would assume the mortgage indebtedness and pay back taxes and future taxes on the property. He testified that in compliance with her request he consulted several business men and they declined to make a deal of that kind; that in consulting parties, amongst others he consulted appellee who was willing on account of friendship existing between appellee and Mrs. Cunningham to help her out, but stated that she did not want to make such an investment and would have to borrow the money to do so; that after appellee had expressed a desire to help Mrs. Cunningham out, they met and discussed the matter in detail, but that he said to them both that she had two grandsons whose mother was living and that they should know what was being done and be given an opportunity to take a deed to the property and pay off the obligations against it and permit Mrs. Cunningham to retain a life estate in and control of the property; that they all declined to do so, saying that they were unable to assume the obligation; that after they refused to do so he consulted E. A. Williams who was a lawyer about preparing and acknowledging the deed and that without charging any fee he did so. Dr. Patterson testified that Mrs. Cunningham's mind was good and not impaired in any way and that she fully understood the transaction.

E. A. Williams testified that he prepared the deed and took it to Mrs. M. J. Cunningham's home and explained it fully to her and that she signed and acknowledged it and expressed appreciation of what appellee was doing for her and great satisfaction at being able to retain her home for her lifetime.

Three or four neighbors testified that after Mrs. Cunningham had executed the deed she told them she had done so. They also testified that she was in her right mind and capable of understanding a business transaction. In fact there is little or no evidence in the record tending to show that she was not in possession of all her faculties at the time she executed the deed. The grandsons, appellants herein, testified that about that time she was forgetful and at times did not recognize them, but this was about the only evidence tending to show that her mind was in the least impaired.

In 1938, she fell and fractured her hip and after that was not as well as she had formerly been, but no one testified that her mind was impaired at the time the deed was executed. The intervener testified that while she was nursing Mrs. Cunningham, Mrs. Cunningham asked Dr. Patterson to bring her a copy of the contract and that finally he did bring a purported copy thereof and left it on the bed and after he left she handed the purported contract to Mrs. Cunningham and informed her that it was a deed and not a contract, whereupon Mrs. Cunningham expressed surprise and disappointment and that in a subsequent conversation with Mrs. Cunningham, Mrs. Cunningham charged Dr. Patterson with having betrayed her and that later Mrs. Cunningham brought suit to cancel the deed. Dr. Patterson denied that any such conversation ever occurred between him and Mrs. Cunningham.

A few days before Mrs. Cunningham died she gave her deposition at length to the effect that she understood that the instrument she signed was a contract to the effect that appellee would pay the indebtedness against the property and after reimbursement any equity therein should go to the Presbyterian church; that at the time she signed the instrument she was in bad health and unable to attend to business; that she knew nothing about the deed; that she did not understand that appellee was to get the place by taking up the HOLC mortgage and that had she so understood she did not know whether she would have signed the deed; that when someone told her that the deed was of record in the courthouse it was

an awful shock to her; that she did not authorize Dr. Patterson to do other with her property than to pledge it for the payment of the indebtedness against it with the understanding that she should retain a life interest therein and that after reimbursement the equity should go to her church.

We think that the chancellor's finding to the effect that she understood that she was signing a deed to the property for the considerations therein expressed at the time she executed same to appellee is in accordance with the weight of the testimony and that she was in possession of all her faculties at the time she executed same. In fact a reading of this record convinces us that both Dr. Patterson and appellee were trying to help Mrs. Cunningham in accordance with her own wish and desire and not in any way trying to deceive or take any advantage of her.

There can be no question under this record that appellants were given an opportunity to obtain just such a deed to the property as was given to appellee, but declined to avail themselves of the opportunity. We see no equity in their claim at this late date to reimburse appellee for the advances she made and take the property. Appellee took chances on the expectancy of Mrs. Cunningham and assumed the burdens. They were not willing to do so or at least did not do so.

It is unnecessary to discuss the claim of Mrs. Mamie McDaniel upon her intervention. Her contract with Mrs. M. J. Cunningham was entered into after Mrs. Cunningham conveyed the property to appellee and after the deed had been recorded, hence, she could not acquire a lien on said real estate under and by virtue of a contract with Mrs. Cunningham.

No error appearing, the decree is in all things affirmed.