LITTLE
ROCK,
July, 1838.

ANDREWS
vs.
FENTER.

MARTIN ANDREWS *against* CHRISTIAN FENTER.

APPEAL *from Hot Spring Circuit Court.*

To authorize a party to be relieved in Chancery against a judgment at law, it must conclusively appear that the judgment was obtained by fraud, accident, or mistake, unmixed with any negligence or fault on his part.

The defendant at law cannot come into a Court of Chancery for a new trial or relief, when there is no special ground of surprise or ignorance of important facts suggested, or where no equitable circumstances have arisen since the trial, and when he has neglected to defend himself with due diligence in the proper place.

If a party becomes remediless at law by negligence, he shall not be relieved in equity. To entitle him to relief, he must show that he has lost his remedy at law by fraud, accident, casualty, misfortune, or misrepresentation.

Where courts of law and equity have concurrent jurisdiction, and the facts alleged are all examined at law, after the case has been decided, equity will not interfere. To give to equity jurisdiction in such cases, it is indispensable to show that the party having the law in his favor, was prevented by some unavoidable occurrence from bringing his case fairly and fully before the court at law.

The refusal of the court of law to grant a continuance, when applied for on the ground that after March Term, 1834, the defendant had obtained a subpœna for the only witness by whom he could prove certain material facts, which subpœna he sent by mail in due time before the next term of the court, to the Sheriff of the adjoining county, where the witness resided; that the subpœna was returned without service, of which return the defendant was ignorant, and that such witness was not in attendance at March Term, 1835, when the application was made and overruled, is no foundation for the interference of equity.

The appellee filed his bill in Chancery in the Hot Spring Circuit Court, on the 21st September, 1835, in which he set forth that on the 17th of March, 1827, he executed his writing obligatory to the appellant, at thirty days, for $192 63 cents, with interest at 10 per cent. per annum from time due till paid; that on the 3d of June, 1828, he executed to the appellant a second writing obligatory, at three months, for $71 82 cents, also to bear interest at 10 per cent; and that on the 13th of April, 1825, he and one Andrew Fenter executed to the appellant their promissory note, at eight months, for $29 37½ cents. He further alleged, that when the first writing obligatory was executed there was a contract between him and one Joseph Henderson, partner of the appellant, for the delivery to them by him, at Little Rock, of a quantity of oil-stones; that on the day when the first writing obligatory was executed, he agreed with Henderson, partner and agent of the appellant, that if he should deliver the oil-stones in Little Rock by the 1st of April, 1829, in case there should be a steam-boat at Little Rock, the appellant would receive them at 7¼ cents per pound, in pay-

ment of the first writing obligatory; that before the day appointed, LITTLE ROCK, the oil-stones were delivered according to the contract, and that a July, 1838. steam-boat was then lying at Little Rock; that the oil-stones were re- ANDREWS ceived in payment of the first writing obligatory, to wit, 3873 pounds FENTER. or upward, at 7¼ cents per pound, amounting to $281 15¼ cents, leaving a balance due the appellee of $88 59 cents; that when he executed the second writing obligatory he did not know that the oil-stones had been received in payment as aforesaid, but supposed them to have been shipped by the appellant, on his, the appellee's account, and that he was indebted to the appellant in the amount of the second writing obligatory, for freightage on the oil-stones to Little Rock, and under that supposition, and upon Henderson's representation to that effect, he executed the second writing obligatory for that amount; and further that the promissory note had long been barred by the statute of limitations.

He further alleged that on the 10th of January, 1834, the appellant commenced an action of debt against him in Hot Spring Circuit Court, on the two writings obligatory and the promissory note, to which he pleaded payment of the writings obligatory, and the statute of limitations as to the note; that after a continuance at March Term, 1834, he obtained a subpœna for a witness by whom alone he could prove the number and price of the oil-stones; that the subpœna was sent by mail, in due time before the next term of the court, to the Sheriff of Pulaski county, where the witness then resided, but was returned by the said Sheriff without service, of which return the appellee was wholly ignorant; that at March Term, 1835, he, by attorney, moved the court for a continuance, on the ground of the absence of said witness, which motion was overruled, and judgment went against him for $293 82¼ debt and $215 47 damages, and costs of suit.

Upon this bill he prayed an injunction to restrain the appellant from further proceeding on his judgment at law, which was granted.

On the 27th of April, 1836, *Andrews* filed his answer, by which he alleged that the pleas filed by *Fenter* in the action at law were voluntarily withdrawn by him on the trial; that Joseph Henderson never was his partner, but his clerk, and as such, his agent; that no such agreement was ever made, as stated by *Fenter* in his bill, nor any agreement to receive oil-stones in payment, as he had been informed by Henderson, and believed to be true; but that he had been informed by Henderson, and believed it to be true, that the agreement was that

LITTLE
ROCK,
July, 1838.

ANDREWS
vs.
FENTER.

the oil-stones should be shipped and carried to different points for sale, on the account and at the risk of *Fenter;* that *Fenter* was to bear the expense, and that the nett proceeds were to be applied to the payment of the debts: and that the sale of the oil-stones had not covered the expenses incurred on them, and that he had never received one cent from the sale of them.

The answer set up as a defence, that *Fenter* had a clear and adequate remedy in the premises at law, of which he endeavored, and was bound, to avail himself there, and that he was entitled to no relief in chancery.

At May Term, 1837, *Andrews* moved to dissolve the injunction on the face of the bill and answer, which motion was overruled.

The following evidence was filed in the case: Jared McCarty, for the appellee, deposed, that in the spring of 1827 he was living with James Lockhart, who was employed by *Fenter* to haul to Little Rock the oil-stones; that he went in with every load, and attended to them; that Henderson was urging him to hasten with them, and that when he hauled in the two last loads he told him that if he had been two hours later he would not have received them; that the oil-stones were taken from his wagon on board the steam-boat. He estimated the quantity delivered at over 3500 pounds.

Philip S. Physic deposed, that after *Fenter* delivered the oil-stones to *Andrews*, *Andrews* told him that he had bought them of *Fenter* at either 7¾ or 7½ cents a pound.

Samuel Williams deposed, that he heard *Fenter* ask *Andrews* if he would take oil-stones for the amount he owed him; that *Andrews* agreed to do so if he would have them at Little Rock by a certain time, when a steam-boat would be there: that *Fenter* then employed the deponent to polish the oil-stones, which he did, and they were hauled in, in due time, by James Lockhart's wagons; that while engaged in polishing them, he again saw *Andrews* and asked him to buy some oil-stones of him, which *Andrews* declined, saying that he had bought a quantity of *Fenter*, and did not wish to purchase any more until he saw what he could do with them, that he did not know whether he would realise any profit from them. He stated the quantity of oil-stones sent to Little Rock at between 3500 and 4000 pounds, at 7¼ cents a pound. He further deposed that *Fenter* had given his note to *Andrews*, at 10 per cent. interest, and the agreement was that if the oil-stones got there by the time spoken of, *Andrews* would receive them

in payment of the note; and further, that the oil-stones were started for Little Rock soon enough to have reached there in time—whether they did so, he did not know.

A letter of Henderson was also filed, by which he agreed to take as many oil-stones as he would take goods for, until *Andrews* arrived, which would be in December, 1826.

The deposition of Henderson stated that in the spring of 1827 he agreed with *Fenter* to ship oil-stones for him to different points, to be sold at *Fenter's* expense and on his account and risk, the nett profits to be applied to the payment of *Fenter's* debt to *Andrews*, due on certain notes or obligations; that the oil-stones were shipped, but enough of them have never been sold to pay expenses; and that there never was any agreement to receive oil-stones as an absolute payment on said notes or obligations.

The court below thereupon decreed that the injunction should be made perpetual for the sum of $268 88 cents, part of the debt, and $203 62 cents, part of the damages recovered at law; that the complainant should recover his costs in his suit in chancery, and the defendant below should have the benefit of his judgment for 24½ cents, residue of the debt, and $11 85 cents, residue of the damages, and costs of his suit at law. From this decree *Andrews* appealed.

TRAPNALL, COCKE, and WATKINS, for the appellant:

1. The groundwork of chancery jurisdiction running through all the books is, *that the party hath no adequate remedy at law.* The pleas of the statute of limitations, and payment, are both peculiarly defences at law, and afford as adequate relief at law as they could do in chancery. 4 *Inst.* 36; 3 *Inst.* 33; *Cro. Jac.* 335; *Cro. Car.* 595; 1 *Mod.* 60.

2. The doctrine in the old books is, that "a cause shall not be examined in chancery, or other court of equity, after judgment at the common law." But the severity of this general rule has been modified by later decisions. The general principle running through those decisions, is, that where any equitable matter of defence arises subsequent to a trial at law, *of which the party could not have availed himself on the trial,* or any newly discovered evidence *which the party had not the means of discovering before the trial at law,* equity will interfere and relieve against the judgment. A party who has mistaken or misshapen his defence at law, cannot require relief in equity. 1 *Vernon,* 71; 3

I

LITTLE
ROCK,
July, 1838.
ANDREWS
vs.
FENTER: *Alkyns*, 223; 1 *Chan. Rep.*, 47; *Penny* vs. *Martin*, 4 *Johnson Chan. Rep.*, 556; *Foster* vs. *Wood*, 6 *John. Chan. Rep*, 87; *Floyd* vs. *Jayne*, 6 *John. Chan. Rep.*, 479; 1 *Bibb*, 173, 252, 354; 2 *Bibb*, 5, 192; 3 *Monroe*, 299; *Evans* vs. *Solly*, 9 *Price*, 525.

Where there is a remedy at common law, none can be given in chancery. Where a party in an action at law had notice of a defence in time to avail himself of it, but neglected to do so, he will not be allowed to litigate the matter in chancery, but is forever excluded by the judgment. *Cutting* vs. *Shackford, Cary Rep.* 15, 201; *Le Guer* vs. *Governeur* et al., 1 *Johns. Cas.*, 436; 5 *Pet. Con. Rep.*

Where a defendant neglects to set up matters of defence at law, either before arbitrators or a jury, he cannot afterwards make such matters the basis of a suit in equity, unless there was some accident or fraud of which the party could not avail himself at law.

The court will not relieve a party on the ground of his having proceeded to trial at law without sufficient evidence, when it was in his power to have obtained that evidence by bill of discovery. *McVicar* vs. *Wolcott*, 4 *John. Rep.*, 510; 2 *J. J. Marshall*, p. 256; same p. 573; 2 *Bibb*, 336, *Veech* vs. *Pennybacker;* 1 *Marshall*, 155.

Quere, whether a person who has neglected at law to plead his discharge under an insolvent act, can avail himself of it in equity.— *Reily* vs. *Lamar*, 2 *Cranch*, 344; *Mason arguendo*, 353.

What jurisdiction a court of equity may exercise after a trial at law. If the defence be purely legal, it should be made on the trial at law. *Barrett* vs. *Floyd*, 3 *Call.* 531; *Maupin* vs. *Whiting*, 1 *Call. Rep.* 224.

3. The reasons why a matter peculiarly cognizable in a court of law, and there adjudicated upon, shall not be afterwards examinable in chancery, are,

1st. That the whole jurisdiction of courts of chancery and their mode of proceedings are in derogation and subversive of the common law, which is the birthright of every Saxon, and were originally exercised only by sufferance.

2. A matter in controversy should not be drawn out of a court of law into a court of chancery, because it will be subjected, *ad aliud examen*, to a trial by witnesses, and the conscience of a single Judge, instead of the trial by jury, where the testimony is by depositions, and not oral, in the face of the court and the parties.

3. Where a matter hath once been adjudicated upon and decided

in a court of law, that matter should not be renewed between the same parties, but one party should be quiet and make no more clamor, else there would be no end to litigation, and every defendant would neglect or refuse to obey process of law, and then set up his own *laches* as ground of relief in chancery, to the utter subversion of the courts of common law.

4. In a court of law after judgment, if there be any newly discovered matter of defence, or any manifest error, either of fact or of law, ample redress may be had by *audita querela*, motion in arrest, or new trial, or by appeal, or writ of error. The Circuit Court in chancery hath no authority to erect itself into an appellate court, to revise the proceedings or correct the errors of a Circuit Court at common law.

4. The appellee in his bill does not *allege* even, any equitable ground for the interference of chancery—no fraud—no accident—no newly discovered matter of defence or matter of evidence—nothing but his own *laches* in not taking the proper steps to procure his testimony, before the third appplication for continuance.

5. The appellant insists, independent of every other consideration, that the weight of evidence is in his favor, from the bill and answer, and the depositions, and that the decree is against equity and good conscience.

6. But the decree should be reversed and set aside, because it is vague, inconclusive, and uncertain. In one part of the decree, the chancellor says, that the plea of the statute of limitations is purely a legal defence, and that the appellee acted clearly in his own wrong when he withdrew that plea on the trial at law as to the promissory note, amounting to $80 07½, and interest from the 13th December, 1825; but instead of allowing the appellant to have the benefit of his judgment at law for the amount of the promissory note, with interest by way of damages, the decree goes on to say that the injunction shall be perpetual as to the sum of $268 88, part of the debt, and $203 62, part of the damages, and that the appellant have the benefit of his judgment at law for 24 cents, residue of his debt, and $11 85, residue of his damages. So that it is uncertain, and the appellant is utterly ignorant of the amount which the decree entitles him to sue out execution for upon his judgment at law.

RINGO, *Chief Justice*, having been of counsel in this case, did not sit therein.

The case being submitted by the appellee without argument, LACY, *Judge*, delivered the opinion of the court:

The appellee, *Christian Fenter*, exhibited his bill of complaint, to be delivered of a judgment at law, obtained against him by *Martin Andrews*, in the Hot Spring Circuit Court.

The bill charged that he executed two writings obligatory, and one promissory note, payable to the respondent; and that at the time of the execution of the first writing obligatory, the complainant entered into a contract with Joseph Henderson, (who is represented to be the partner and agent of the appellant,) for the purchase and delivery of a certain quantity of oil stones, and which were agreed by Henderson to be taken and accepted in discharge of the respondent's obligation, at the rate of seven and a fourth cents per pound. That he delivered the quantity or number of pounds of oil stones agreed upon, in discharge of his obligation; and that after paying off the full amount due upon the first obligation, there was a balance still remaining in favor of the respondent. That at the time he executed his second obligation to *Martin Andrews*, he was ignorant of the fact that the oil stones had been delivered and accepted; but believed from the representation and misstatements of Henderson, that he was indebted to them for freight and charges; and consequently he agreed and did execute his second obligation. The bill further alleges, that both obligations were fully paid off, and discharged by the purchase and delivery of the oil stones, before the respondent commenced his suit at law in January, 1834, on the writings obligatory and promissory note. It further alleges, that the complainant put in the plea of payment to the writings obligatory, and the statute of limitations to the promissory note in bar of the action of debt. That after the case was continued at the March Term, 1834, he caused a subpœna to issue for Samuel Williams, the only witness by whom he could prove the price of the oil stones agreed to be purchased, or the amount or quantity delivered. That he forwarded the summons to the Sheriff of Pulaski county, where the witness resided, and the writ was returned, not executed.— That at the March Term, 1835, when he moved the court by his attorney, for a continuance of the case, he was ignorant of the fact that the subpœna had not been served on the witness. That the bill further charges, that the complainant's motion for a continuance was overruled, and that the plaintiff had judgment against him for the amount of the

LITTLE
ROOK,
July, 1838.

ANDREWS
vs.
FENTER.

debt, in the declaration mentioned, and for damages and costs. The complainant prays that a writ of injunction be granted to him to stay and restrain the proceedings upon the judgment at law, and that, on the final hearing of the cause, that the balance due him from *Martin Andrews*, for the purchase and delivery of the oil-stones, be decreed in his favor, and that the injunction be made perpetual.

The bill further alleges, that the note sued on was barred by the statute of limitations; and it contains a prayer for general relief. The injunction was granted, and the proceedings on the judgment at law, were restrained and superseded by the writ issued on chancery. The answer denies all the material allegations of the bill. It admits the execution of the writings obligatory and promissory note, and that judgment was obtained upon them. It alleges that the plea of payment, and the statute of limitation, were withdrawn, and that judgment was given by *nil dicit*. It denies that Henderson ever was a partner with the respondent; but states that he was a clerk in his store, and that the contract pretended to be set up by the complainant, is wholly unfounded; but that Henderson agreed to receive for the respondent whatever oil-stones he might think proper to deliver and to ship them for sale, and after deducting the expenses for freight, charges, and commission, to apply the nett proceeds in discharge of the complainant's obligations. That on these express conditions, the oil-stones were delivered to Henderson for the respondent, at the risk and loss of the complainant. That according to the agreement, a quantity of oil-stones were delivered to different points, for the benefit of the complainant, and that the profit arising from the sales had not been sufficient to defray the expenses of the shipment and commission.

The answer sets up another matter in defence: It alleges that the complainant had a full and adequate remedy at law, and having failed to make his defence at a proper time, and before a competent tribunal, that a court of chancery has not jurisdiction of the case, and prays that the bill may be dismissed with costs.

The depositions taken in the cause, do not, in express terms, or by any legal or just interpretation, prove the material allegations in the bill. One of the witnesses states, that the oil-stones were delivered, and that Henderson, the agent or the partner of *Andrews*, paid him for the hauling. Two other witnesses proved that, in a conversation with *Martin Andrews*, that he spoke of having purchased oil-stones from the complainant, and one of them gives the amount and price;

LITTLE ROCK. July, 1838.

ANDREWS vs. FENTER.

but neither of the witnesses denied the nature of the contract, nor do they state in express terms, that the oil-stones were delivered in payment of the obligations.   One of them says he polished the stones, and that in a conversation with the respondent, he understood they would be delivered in discharge of his obligations, and he was paid in the store of *Andrews* for his labor.   A letter from Henderson was introduced, which states that he had concluded not to make any other contract for more oil-stones, than the complainant was willing to take goods for, until Maj. *Andrews* wrote him further on the subject.   The deposition of Henderson expressly disproves the allegations of the bill, and states that the agreement between *Fenter* and himself to be literally such, as is set forth in the respondent's answer: that the oil-stones were not received, or taken in payment of the obligations; but that a quantity of them were delivered at the risk and loss of the complainant: that it was the express understanding between the parties, that *Andrews* was to ship the stones for complainant's benefit; and after deducting all that was due for freight and charges, he was to apply the nett proceeds, if any was remaining, to the payment of his debt: that the sales of the stones, he believed, has not paid the freight, charges and costs of shipment.   This is, in substance, the whole proof in the cause.   On this state of the case, the Circuit Court rendered a decree that the injunction be made perpetual for the amount of the proceeds of the sale of the oil-stones, and interest thereon, from the time of the delivery; and that the complainant be forever released from so much of the judgment at law, had and obtained against him by the respondent, and that the balance remaining on the judgment unpaid and due, was decreed in favor of the respondent, and that he pay the costs of the suit.   And it was further decreed, that the note executed by the complainant to the respondent, was not barred by the statute of limitations.   From this decree, the respondent prayed an appeal.— Admitting that a court of chancery has jurisdiction of the cause, (which is by no means conceded in this case,) the question then arises, does the bill upon its face show any equity, or are its material and important allegations sustained by the proof.   The contract charged is not established by the depositions, and if it were, it would form no ground for relief in equity.   The injury the party complains of is, that judgment was rendered against him, when it ought not to have been, in the absence of a material witness, and when the debt was ully paid off and discharged.   The subpœna was sued out for the

witness in March, 1834, and the trial was not had until March, 1835. It does not appear that, on the motion for the continuance of the cause, the defendant ever filed an affidavit, or that he swore to it. The bill simply charges, that by attorney, he moved the court to continue the case, which motion was overruled. Admitting the proper affidavit was made, did the court err in continuing the cause? The only excuse that is given for the absence of the witness, is, that the subpœna was returned by the Sheriff, not served; and the defendant alleges, that he was ignorant of that fact at the trial, though it must have been returnable to the term preceding; for it issued in March, 1834, and judgment was not rendered until March, 1835. Can a judgment at law be impeached in chancery, when, by the party's own showing, he is guilty of gross negligence or laches, and that too, in a case where his remedy was complete and adequate at law. We are not aware that equity has ever interfered to set aside a judgment at law, for mere irregularity. In this case the judgment was perfectly regular, and the continuance properly refused. To authorize a party to be relieved against a judgment at law, it must appear conclusively that the judgment was obtained by fraud, accident or mistake, unmixed with any negligence or fault on his part. The defendant cannot come into a court of chancery for a new trial or relief, when there is no special ground of surprise, or ignorance of important facts suggested, or where no equitable circumstances have arisen since the trial, and where he has neglected to defend himself with due negligence in the proper place.

This principle is settled in the case of *Scotland* vs. *Wheeler*, 3 *Johnson's Rep.* 288; *Dekemer* vs. *DeChatillon*, 4 *Johnson*, 92; and *Baker* vs. *Elking*, 1 *Johnson's Rep.* 444; *Smith* vs. *Lowrie*, 3 *Johnson's Rep.* 322. In the case now before the court, has the party shown that he was taken by surprise? or has he suggested that he was ignorant of any important fact that has since come to his knowledge, and which he could not have discovered before, by due diligence? Or has he alleged that the judgment was obtained by fraud? It is most manifest that none of these equitable grounds are charged in the bill; and it is equally evident, from his own showing, that he was guilty of very gross negligence, in not preparing his case for trial. Upon this allegation of the bill, it is clear that the complainant has not the slightest claim or pretext to the interposition of a court of equity for relief. Is the contract set up by the bill admitted by the answer, or established by the proof? The answer expressly denies it. The proof is vague and

LITTLE
ROCK,
July, 1838.

ANDREWS
*vs.*
FENTER.
uncertain, and does not legally establish the allegations of the bill.—— The witnesses speak of a purchase of oil-stones made by *Andrews* from the complainant; but they neither define or illustrate the nature or condition of the contract, nor do they say that the purchase thus made was to go in discharge of the complainant's obligation. The letter of Henderson does not state that the oil-stones were so received or accepted. It merely says that he was unwilling to make a contract for the delivery of any more oil-stones, until he heard from *Andrews*, and it clearly intimates what had already been delivered was paid for in goods.

If this testimony stood uncontradicted, it would be wholly inconclusive and unsatisfactory, and would not authorize a decree upon the bill. The answer denies that any contract was made, or any purchase entered into, for the delivery of any quantity of oil-stones, in payment of the obligations and note held upon the complainant.

It admits a quantity of oil-stones were received on commission, and states, after deducting the amount due for freight, charges, and shipment, that the nett proceeds arising from the sales, were to be applied to the payment of his debt, and that no profit or balance is due to the complainant on that account, as the sum for which they sold is not sufficient to pay the amount with which they are charged. Henderson, the witness who made the contract with the complainant, and who acted as the agent of the parties and factor in the business, expressly disproves the whole contract charged in the complainant's bill, and establishes the agreement fully and completely, as set up by the answer. The bill, then, containing no equity upon its face, and all its material allegations being denied by the answer, and expressly disproved by the testimony, should have been dismissed with costs. The court might here close their inquiries, but as there is another important question raised by the answer, which is directly before us, we consider it our duty to examine and decide it. The answer alleges that the plaintiff had a full and ample remedy at law, and having failed to make his defence before the proper tribunal, he cannot now come into a Court of Equity. The pleas to the action of debt in this case, were payment and the statute of limitations. It is obvious that the defence set up is entirely legal, and the pleas, if proved, formed a good bar to the action.

"The concurrent jurisdiction of equity," says Justice Story, "has its true origin in one of two sources, either the courts of law, though

they have general jurisdiction in the matter, cannot give adequate, specific, and perfect relief, or under the actual circumstances of the case, they cannot give any relief at all." *Story's Com. on Equity*, 93. Equity will embrace all cases of legal rights under peculiar circumstances, where there does not exist a complete, adequate and plain remedy at law. See *Jeremy on Equity Jurisprudence*, 292 and 297.

The ancient doctrine upon the subject was, that a cause shall not be examined in Equity, after it has been tried and determined at law. *Cro. Jac.* 335, *Cro. Car.* 595; 3 *Inst.* 33, 4 *Inst.* 36; *Atkyns* 323.— But the severity of the rule has been greatly relieved by very many recent decisions. In the case of *Perry* vs. *Martin*, 4 *Johnson's Chan. Rep.* 536 and *Foster* vs. *Wood*, 4 *Johnson's Chan. Rep.* 67; *Floyd* vs. *Jayne*, 6 *Johnson's Rep.* 479, the doctrine is clearly laid down, and the chancellor in giving his opinion remarks—"That he does not know of any principle that will authorize equity to take jurisdiction of a case where the remedy was in the first instance full and adequate at law; because the party may have lost that remedy, founded on negligence, and not on accident, misfortune, misrepresentation or fraud." If a party becomes remediless at law by negligence, he shall not be relieved in Equity. To entitle him to relief, he must show that he has lost his remedy at law, by fraud, accident, casualty, misfortune, or misrepresentation. *Fonblanque on Equity*, p. 30, and the cases there cited; 2 *Cran.* 334; 4 *Cran.* 531; 1 *Call*, 224. Where courts of law and equity have concurrent jurisdictions, and the facts alleged are all examined at law, after the case has been decided, Equity will not interfere. To give to Equity jurisdiction in such cases, it is indispensable to show that the party having the law in his favor, was prevented by some unavailable occurrence from bringing his case fairly and fully before the court.

The question has been fully examined and settled in the case of *Smith* vs. *McIver*, 9 *Wheaton*, 534. "Admitting," says Chief Justice Marshall, " the concurrent jurisdictions of Equity and Law, in matters of fraud, we think the cause must be decided by the tribunal which first obtained possession of it, and that each court must respect the judgment and decree of the other. A question decided at law cannot be reversed in a Court of Equity without the suggestion of some equitable circumstances of which the party could not avail himself at law." In the case now before us, does the bill charge any

J

LITTLE
ROCK,
July, 1838.

ANDREWS
vs.
FENTER.

equitable circumstances that the complainant could not have availed himself of on the trial at law?

Does it allege surprise or the discovery of new evidence since the trial, which by due diligence he could not have procured before? Or does it charge either accident, mistake, misrepresentation, misfortune, or fraud? None of these things are alleged in the bill, and as the complainant's remedy was full and adquate at law, and he failed to make it through negligence or ignorance, he cannot now be relieved in Equity.

In every respect in which this case presents itself to our minds, either on its merits, or the question of jurisdiction, we are clearly of the opinion, that the decree of the court below was evidently erroneous. The judgment of the Circuit Court in entering up the decree, must, therefore, be reversed with costs; the cause remanded to be proceeded in agreeably to the opinion here delivered, with instructions that the complainant's bill be dismissed for want of jurisdiction, with costs, and that the writ of injunction be dissolved, and that the appellant have the full benefit of his judgment at law, with six per centum damages on the amount released from the injunction.