OuDHAM, J. delivered the opinion of the court. We do not conceive it to be necessary in this case, to determine at what time a defendant should regularly object to a bill for want of equity, or whether the defendant in this case has sufficiently reserved the point in his answer, so as to enable him to question •the sufficiency of the bill upon the final hearing; but will proceed, at once, to the consideration of the question, whether the bill discloses a defence cognizable in a court of equity. It is laid down as a general rule, that “if a creditor does any .act injurious to the surety, or if he omits to do any act when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law, at least in equity.” 1 Story’s Eq. Ju. 321. The jurisdiction of this class of cases originally and intrinsically belonged to equity, id. 475, and rests upon the principles of good faith between the parties, and to prevent ¡either party from taking an undue advantage of the other. It is said that the conscience of the party is affected by the relationship of .creditor, principal and surety, and that the creditor is bound to a faithful observance of the rights of the surety, and to a performance of every duty' necessary for the protection of those rights. The leading case upon this subject is Rees vs. Herrington, 2 Ves. 540, in which it was definitely settled that, if the obligee in a bond with a surety, without communication with the surety, takes notes from the principal, and gives further time, the surety is discharged, Since that case, the giving of time has been considered and held as a settled subject of defence in equity, and has never been doubted. This principle having become firmly engrafted in the system of equity juris.prudence, courts of law acting upon the same broad and liberal principles of equity, have adopted the same rule as the subject of legal remedy, except in cases where the surety was estopped, as for instance by his bond, from averring his suretyship in a court of law: but Mr. Justice Story remarks, “but still the jurisdiction now assumed in courts of law upon this subject in no manner affects that originally and intrinsically belonging to equity.” Com. on Eq. Ju. 475. • Several of the courts of the United States acting upon, and guided by those same liberal and enlightened principles of equity, have extended the defence of the surely still further. In Pain vs. Packard, 13 J. R. 174, it was held, “ that if an obligee or holder of a note, who is requested by a surety to proceed against the principal without delay and collect the money of him, who is then solvent, neglects to proceed against the principal, who afterwards becomes insolvent, the surety will be discharged. That in law and equity the holder was bound to use due vdiligence against the principal.” This question was again raised in King vs. Baldwin, 2 J. C. R., when Chancellor Kent dissented from the doctrine of the supreme court in Pain vs. Packard; but an appeal was taken from his decree'to the court of errors, where his decision was reversed, and the rule, as laid down by the supreme court, was held to govern both in law and in equity. 17 J. R. 384. Although the authority of this last mentioned case has been called in question upon the argument of this cause, as well as upon various other occasions, yet we conceive that the reasons given by Chief Justice Spencer, in the opinion which he delivered, have never been met, and refuted. In truth, they are unanswer^Jala^jSSa^ased his decision upon the solid ground “that the credj'&.^JgiSi&^^mtable obligation, and such is the essence of thewmiract, to obtaiiff payment of the principal debtor and not fron|j^j^^u^|^;lSQlá%the principalis unable to pay the debt.” Thi,||case was received fpd approved of, as authority, by the supreme c«¡¡url* JjP^mlsseKjn Thompson vs. Watson & Gibson, 10 Yer. 362. ^feasiá^Sífertífis a statute similar to ours, requiring the holder to bring suit against the principal upon notice from the security, but differing as to the proof of notice. Yet in the case last cited, and in the case of Hancock vs. Bryant & Hunt, 2 Yer. R. 476, the court held the sureties discharged, although the notice in the first case was verbal, and in the last could not be proved by two witnesses, as required by the statute. In neither of these cases did the complainants come within the provisions- of the statute, and could not have availed themselves of their defence at law; yet they were held' to be exonerated in equity. See Herbert et al. vs. Hobb et al., 3 Stew. Ala. 9. The complainants in this case, in their bill, allege as'strbng a case as either of those cited, and like the case of Hancock vs. Bryant & Hunt, and Thompson vs. Watson & Gibson, they also allege the additional ground for equitable relief, that the notice in writing, which was served upon the holder of the bond, requiring him to sue, was mislaid, and- complainants were fearful that they could not establish the contents of the notice by proof; and is, so far, a stronger case for the jurisdiction of the chancellor than King vs. Baldwin. Our statute declares that, unless the holder brings his suit within a specified time after service of notice, and prosecute the same to judgment and execution with due diligence, in the ordinary course of law, the surety shall be exonerated from liability. It is true that this statute declares a legal right, but it is based upon equitable principles, those same principles which first induced courts of equity to take cognizance of this class of cases, and to determine that if the obligee should give time to- the principal upon a new contract, it discharged the surety. The act is almost a reaffirmation of the rights, which the supreme court, and court of errors in New York, and the supreme court of Tennessee had declared in the cases already cited, that a court of equity would observe and enforce. Courts of equity originally took cognizance of this class of cases, not because of the particular state of facts existing, but in consequence of the relationship existing between the parties as creditor, principal and surety, and because, in the language of Chief Justice Spejtcer, already quoted, “the creditor is under an equitable obligation and such is the essence of the contract, to obtain payment of the principal debtor and not from the surety, unless the principal is unable to pay the debt.” An additional reason why chancery took jurisdiction in such cases, when the contract was by a bond, ahd all appeared to be principals, was that the surety was estopped by his bond from averring in a court of law that he executed the instrument as surety, hut in chancery might aver and establish the character of his undertaking. The statute is but declaratory, and an extension of an existing and originally equitable remedy, and which has been adopted and converted by courts of law into a subject of legal cognizance. The statute extends the original remedy, or so qualifies it that the surety is not bound to show the injury resulting from the subsequent insolvency of the principle to entitle himself to a discharge from his suretyship. From this examination into the authority, as well as principles which induced courts of equity originally to take j urisdiction of this interesting class of cases, and by which they are still governed in the exercise of that jurisdiction, we conclude, that the defence set up by the bill belongs properly to the original jurisdiction of equity, and that the statute introduces no new rule upon the subject, but is only declaratory of an existing recognized principle under the modification above suggested. Inasmuch as the character of the complainants’ undertaking is apparent upon the face of the bond, there is no doubt but that they might have pleaded the facts set up by the bill, in the action at law against them, and, by proof, entitled themselves to a discharge upon the trial in that action : as in the case of the State Bank vs. Watkins, ante 123, decided at the present term of this court. In such a case the party is not estop-ped by his deed from averring and proving the nature of his undertaking, but is sustained by the instrument itself. The defence being thus available either in law or equity, the next question for our consideration is, whether the complainants were bound to make their defence in-the action at law, and having failed to do so, whether they are precluded from coming into equity for relief? In Bently's Exr. vs. Dillard, ante 79, decided at the present term, this court held that “if a court of law and a court of equity have concurrent jurisdiction over the subject matter, the party may make his election as to the tribunal which shall determine the controversy, and cannot be compelled to submit to an adjudication at law, when he prefers going into chancery, but if he makes his defence at law, he cannot afterwards resort to chancery— the court which fn\st acquires jurisdiction determines the matter conclusively between the parties. But if he makes no defence at law, he may ask relief of the- Chancellor.” And it was further held that, where “the defence set up is purely legal and is exclusively cognizable in a court of law,” as the alleged payment in that case, the party cannot resort to chancery for relief “unless he was igno--rant of the facts pending the suit, at law, or that they could not have been received as a defence, or unless he was prevented from availing himself of their benefit by fraud, accident, or the act of the opposite party unmixed with negligence on his part.” The industry and research evinced by the counsel in the investigation of this cause, as well as the ability displayed in the argument at the bar, demand of the court a reconsideration of the principle thus enunciated. It is contended for the appellee, that in this State there is no concurrent jurisdiction common to courts of law and chancery, because it is provided by the constitution, Art. 6, sec. 6, “until the General Assembly shall deem it expedient to establish courts of chancery the circuit courts shall have jurisdiction in matters of equity, subject to appeal to the supreme court, in such manner as may be prescribed by law;” and that the General Assembly has enacted that “the circuit courts shall exercise chancery jurisdiction in this State in all cases where adequate relief cannot be had at law, and shall, in all things, have power to proceed therein according to the rules, usages and practice of courts of chancery, except when it may be otherwise provided by law, and to enforce their decrees by execution, or in any other manner proper for a court of chancery,” Rev. Stat. ch. 23, sec. 1, and because further, it is contended, the Rev. Stat. ch. 43, sec. 3, concerning “courts of record” by excluding every conclusion, limits the jurisdiction of the circuit courts “as courts of equity, to all cases where adequate relief cannot be had by the ordinary course of proceedings at law,” and that, that conclusion is sustained by other enactments of the legislature conferring upon the circuit courts, as courts of law, subjects which were formerly of equity jurisdiction. The language of these statutes is precisely similar to that of the judiciary Act of Congress of Sept. 24, 1789, ch. 20, sec. 16, yet the supreme court of the United States has held that, that section of the act, by defining the juris-» diction of the circuit courts of the United States in equity, to extend only to cases where plain, adequate and complete remedy cannot be had at law, introduces no new principle, that the rule was so before, independent of the Act of Congress. New York vs. Connecticut, 4 Dal. 11, and that the remedies in the courts of the United States are to be at common law and equity, not according to the practice of State courts, but according to the principles of common law and equity, as distinguished and defined in that country, from which we derive our knowledge of those principles. Robinson vs. Campbell, 3 Wheat. 212: that the section of the act is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. Boyce’s Exr. vs. Grundy, 3 Pet. R. 210. These decisions are not confined, in their application, as it is contended by the appellee, to the mode in which the jurisdiction shall be exercised, but extend to the remedy itself, and to the subjects over which the "courts of the United States will take cognizance as properly belonging to chancery jurisdiction, and are conclusive as to the construction which must be put upon the acts of the Genera] Assembly above cited: that they introduce no new rule, but are only declaratory of the jurisdiction of courts of chancery, as it stood before their enactment, and that therefore, our circuit courts have jurisdiction over the same subjects as are common to a court of chancery, and to be exercised according to the known rules of chancery as understood at the time of the passage of those acts. The circuit courts, however, are not depend-ant upon those acts of the legislature for their jurisdiction in matters of equity. The constitution specially provides that “the circuit courts shall have jurisdiction in matters of equity until the General Assembly shall deem it expedient to establish courts of chancery,” by which it meant such jurisdiction as a court of chancery could properly exercise at the time oí the adoption of the constitution. “The right of appeal to the supreme court” is also given, to be prosecuted “in such manner as may be prescribed by law.” The- jurisdiction with the right of appeal is conferred by the constitution itself, but the manner in which appeals shall be prosecuted to the supreme court is left to the General Assembly to prescribe and define. If the acts of the legislature under .consideration were subject to no other construction than that contended for by the appellee, they would become nugatory, as their provisions would he nothing more than a legislative attempt 1o limit and abridge the circuit courts, as courts of chancery, in the exercise of a general jurisdiction conferred by the constitution itself. Judge Stout, in his commentaries on equity jurisprudence, says that “one rule is that if jurisdiction has properly attached in equity, on account of the supposed defect of remedy at law, that jurisdiction is not changed or obliterated by the courts of law now entertaining jurisdiction in such cases, when they formerly rejected it-This has been repeatedly asserted by courts of equity, and constitutes in some sort, the pole star of portions of its jurisdiction. The reason is, that it cannot be left to courts of law to enlarge or restrain the powers of equity, at their pleasure. The jurisdiction of equity, like that of law, must be of a permanent and fixed character. There must be no ebb or flow of jurisdiction dependant upon external changes. Being once vested legitimately in the court it must remain there until the legislature shall abolish or limit it; for without some positive act, the just inference is, that the jurisdiction shall remain upon its old foundations.” 1 Eq. Com. 80. At page 96, he further says, “The first consideration then is, whether there is an adequate remedy at law, not merely whether there is some remedy at law. And here a most material distinction is to be attended to. In modern times, courts of law frequently interfere and grant a remedy under circumstances, in which it would certainly have been denied in earlier periods ,• and sometimes the. legislature, by express enactment, lias conferred upon courts of law, the same remedial faculty which belongs to courts of equity. Now (as we have seen) in neither case, if courts of equity originally obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of authority at law, in regard to legislative enactments, unless there are prohibitory or restrictive words used, the uniform interpretation is, that they confer concurrent and not excl usive remedial authority. And j 1 would still be more difficult to maintain that a court of law, by its own act, could oust or repeal a jurisdiction already rightfully attached in equity.” The doctrine thus laid down is fully established and sustained in Brownley vs. Holland, 7 Ves. 19. Kemp vs. Pryor, ib. 248, 249, and 250. Ex parte Greenaway, 6 Ves. 812. Atkinson vs. Leonard, 3 Broc. Ch. Rep. 218. East India Company vs. Brodham, 9 Ves. 466. King vs. Baldwin, 17 J. R. 384. Post vs. Kimberly, 9 J. R. 470. The supreme court of Kentucky has laid down the rule, in a number of cases, as it was declared by this court in Bentley’s Exr. vs. Dillard. In Moffit vs. White, 1 Littell’s R. 324, the court held that, “if no defence had been made at law, there could have been no question of the propriety of Moffit’s applying for relief to a court of equity. * * * But as the defence is admissible in both courts, after an attempt at defence in either, the loser ought not to be permitted to bring the same defence again in litigation in another court.” In Harlin vs. Wyngate, 2 J. J. Marsh. Rep. 138, the rule is again repeated and laid down in the following language : that the complainant “might have made his defence at law, but his failure to do so did not deprive him of his right to appeal to the chancellor for relief. When the common law judge and the chancellor have concurrent jurisdiction, a party who makes defence at law, cannot afterwards seek redress in chancery, but if he makes no defence at law, he may ask relief of the chancellor. And in Clay vs. Fry, 3 Bibb 248, the same court held this opinion: “where matter of defence is purely legal and exclusively cognizable in a court of law, it is clear if a party fails or neglects to avail himself of it at law, he cannot be permitted to resort to a court of equity. But if the defence be (as it is apparent it is in this instance,) of such a nature that the party may avail himself of it either at law or in chancery, although he should fail to take advantage of it at law, he may nevertheless, according to the repeated decisions of this court, resort to a court of equity for relief in the same manner, and for the same reason that a party, having a claim of which a court of law and a court of equity have concurrent jurisdiction, may elect to which tribunal he will apply to enforce his claim.” And so they held in Saunders vs. Jennings, 2 J. J. Marsh. 513. Timberlake vs. Cobbs, ib. 136, Yetton vs. Hawkins, ib. 2. Power vs. Reeder, 9 Dana 10. Carlyle vs. Long, 5 Littell 167. Morrison vs. Hart, 2 Bibb 4, Davidson & Co. vs. Givens, ib. 200. Hughes vs. McCoun’s adm’r, 3 Bibb 254. These cases show an unbroken current of decisions running through a series of years by the highest tribunal of a sister State, sustaining the doctrine as laid down by this court. In Tennessee, the current of decisions of her supreme court has been equally uniform, establishing the same rule. Reeves vs. Hogan & Henderson, Cooke’s R. 175. Stothart vs. Burnet & Raymond, ib. 417. Turney’s ex’r. vs. Young & Arnold, 2 Tenn. Rep. 267. Peyton vs. Rawlins, 4 Haywood R. 77. Appleton vs. Harwell and others, Cooke’s R. 242. Russell vs. Stinson and others, 3 Hay. 1. Winchester vs. Gleaves' devisee, 3 Hay. R. 213. Winchester vs. Jackson and others, ib. 305. In the case of The United States vs. Myers et al. 2 Brock. 516, upon motion to dismiss the bill for want of jurisdiction because there was a perfect remedy at law, Judge Daniel said “the principle that wherever there exists a right or remedy exclusively legal, and perfect in its character and operation, a court of chancery cannot take cognizance, is fully recognized.” Judge Barbour said “ the principle which we are now considering, applies to those cases in which, ordinarily, the only remedy is at law ; but the party comes into equity upon the ground that by reason of some impediment in the way, or some unfair legal advantage acquired by his adversary, justice cannot be done him at law. The court inquires whether such impediment or legal advantage exists, and accordingly as it does or does not, grants or withholds relief. But it does not apply to those cases in which the courts of equity and law have a concurrent jurisdiction. In those cases, although the concurrent jurisdiction of the court of equity most probably originated from the consideration that there was not, or might not be an adequate remedy sf Jaw, yet where the concurrent jurisdiction has been established, if the party elect to come into a court of equity, it is no objection to the jurisdiction in the giren caso, that the party might have a remedy at law, even although in that particular case, the remedy might be adequate. Thus, if one man, appoint another his bailiff or receiver, I suppose there is no doubt if money be received ahd not accounted for, the party may bring a suit in equity for an account, or an action at law of account or assumpsit; and the equity jurisdiction will not be ousted, because these concurrent remedies lie at law. Again, a party may now have a remedy upon a lost bond, but that does not oust the ancient equity jurisdiction. But what is more in point, is the case put by Mr. Joiijíson, which is admitted in all the books, that if a party have a mortgage and bond for the same debt, he may even pursue both simultaneously, until he gets satisfaction.” In the case of Rathbone vs. Warren, 10 J. R. 595, the defence set up by the bill might have been made in the action at law, but the court took jurisdiction and decreed the relief sought. The defence belonged to the original jurisdiction of-equity, and consisted in the fact that time had been given to the principal, upon a new contract, to the prejudice of the surety. And so in King vs. Baldwin, 17 J. R. 384, the court entertained jurisdiction of the matter, and enjoined the judgment at law, upon a state of facts which had previously been decided in Pain vs. Packard to constitute a good .defence at law. The case of Boyce’s ex’r. vs. Grundy, 3 Peters’ Rep. 212, is also directly in point upon this question. That was a bill filed by Grundy to be relieved against a judgment at law, obtained against him by default, alleging fraud and misrepresentation upon the part of the defendant in procuring the execution of the contract.— Fraud is one of the acknowledged subjects of concurrent jurisdiction, and vitiates all contracts which are tainted with it, both in law and equity. Grundy could have established the fraudulent misrepresentation in the action at law against him. This he did not do, but elected to suffer judgment to go against him, and he appealed to a court of equity for relief. The judgment was perpetually enjoined, and the contract was rescinded. Upon appeal to the supreme court of the United States, objections were made to the jurisdiction, because the defence might have been made at law, but the objections were overruled and the decree was affirmed. The court remarked, in the opinion delivered by Mr. Justice Johnson, that, “ the defence of fraud might have been resorted to, and ought to have been sustained in that particular suit, and would have greatly aided the complainant in a bill to rescind, yet it was obviously not an adequate relief, because it was a partial one.”— Yet, we will remark, that it was an adequate remedy against the demand set up at law, but it is true that it was not adequate to procure the rescisión of the whole contract in that action. The party, in the action at lavy, attempted to enforce but a portion of the contract, to which the defendant could have made a complete and successful defence, which he did not do; therefore, according to the principle contended for by the respondents, the court should not have enjoined the judgment. The case of Smith vs. McIver, 9 Wheat R. 532, does not at all conflict with, or in any respect contravene the doctrine as settled in the cases cited. In that case the bill set up the same defence which had been made in the action at law, and which had been decided against the party, which judgment he was unable to have reviewed in the supreme court of the United States, because the amount in controversy was not sufficient to give jurisdiction. The bill sought a hearing in chancery upon the same state of facts, which had been adjudged against the party in the action at law. There are several cases, in which the language of the judges imply a different doctrine to that laid down by this court in Bentley's ex'r. vs. Dillard. Many of the cases are based upon a peculiar state of facts, which clearly warrant the judgment pronounced upon them. But the facts of the casos, as well as the questions really involved in them and decided by the courts, prove that they do not form exceptions to the rule as laid down by this court.— Several of these cases we will examine. Le Guen vs. Gouverneur & Kemble, 1 John. Cas. 436, was a bill filed to enjoin a judgment at law where the plea of non-assumpsit had been filed, and the right of recovery in the action at ¿aw had been resisted in every stage of the proceedings. Upon the first trial in the circuit coart, there was a verdict for the'defendants; a new trial was granted by the Supreme Court, and upon the new trial, a special verdict was returned by the jury, and upon that verdict judgment was entered for the plaintiff, and the case was finally taken to the court oferrors, where the judgment was affirmed. The defendants in the action at law filed their bill iu chancery to be relieved of the judgment upon grounds of fraud, of which they had full knowledge at' the time of the trial at law, and of which they could have availed themselves upon1 that trial, but having elected to place their defence upon a different ground, they were bound by the election. Having selected the grounds of their defence, submitted it to a court of law, contested and litigated the demand against them upon that ground, from the circuit court to the highest tribunal known to the laws of the State, it was certainly unreasonable, that the defendants should have been permitted to resort to chancery, upon wholly different grounds than those assumed upon the trial at law, and which were known to them in time to have been available upon that trial.' And so Kent, J. seems to have regarded the case. In bis opinion he says “ the respondents had sufficient knowledge of the charge of fraud, and had they made, as they were bound to do, due inquiry and ordinary efforts,, they would have obtained the proofs. But they have chosen to abide by one species of defence, and to waive another, and like other litigants, in similar cases, they must be concluded by their election.” In Virginia, although the chancellor seems to have laid down as an inflexible rule, for his own observance while sitting as chancellor, “that in all cases where relief can he had at law, it shall not be had in equity, unless there be some impediment at law,” 4 Hen. & Mun., yet upon a careful examination of the cases cited, they were all such as strictly come within the reason of that rule, according to the known rules of chancery. Batcheldor vs. Elliot's adm'r. 1 Hen. & Mun. 10, was a bill filed, among other things to establish a demand for work done for the intestate in his life time, and for other purposes; Yancy vs. Fenwich, 4 Hen. & Mun., was to enjoin a judgment on account of payments, without even stating a reason why the defendant did not defend himself at law. Alderson vs. Biggers et al. ib. 470, was a bill filed to set aside a sale made by a defendant, to avoid a distringas issued under a judgment in detinue for certain negioes. Winfield vs. Crenshaw, ib. 474, was to abate a nuisance, for which an action at law was then pending between the parties. And the other cases, cited by the counsel for the defendant in this case, are of similar character, and go to establish the rule that, where the defence is purely legal, the party must defend, in the action at law, and cannot have relief in equity, unless he was ignorant of the facts, and could not by due diligence have availed himself of them upon the trial, or was prevented from making his defence by fraud of the opposite party, accident or mistake unmixed with negligence on his part. And such seems to be the result of the decisions in Alabama. Moore vs. Dial, 3 Stew. 157. Hill vs. McNeill, 8 Porter 432.—French vs. Garner et al. 7 Porter 549. Haughy vs. Strong, 2 Porter 177. Thomas & Harris vs. Hearn, ib. 262. Teague vs. Russell & Moore, 2 Stew. 420, were all cases in which the matters set up by the bills were purely legal, or on which the parties had defended or attempted to defend at law. In Herbert & Kyle vs. Hobbs & Fennell, 3 Stew., the court admits the matter set up by the bill as a defence, and which was the same as in this case, was “available as a defence in law or equity,” but field “that as the securities did not insist on its benefit, in tlieir defence to the action at law, they were now precluded from relying upon it as a ground of equitable jurisdiction.” The reported case-does not state that the complainants made any defence to the action at law, but from the above remark of the court, it is presumed that they did, and that it was upon that ground that j urisdiction in equity was refused. In Ellis vs. Bibb. 2 Stew. 63, was a clear case of concurrent jurisdiction — the giving of time to the principal upon a new contract. The court took jurisdiction of the case, and granted relief by injunction. The case of Abram et al. vs. Camp, 3 Scammon, 290, and Elston vs. Blanchard, 2 Scammon 429, are to the same effect as the cases in Alabama. In the first case the court said “A party electing to make his defence at law and failing, is precluded from going into chancery to litigate anew the same matters And in the last case the question did not necessarily arise as the bill was radically defective, and also the defence was a want of consideration of a promissory note. The cases cited by the respondent from the decisions of the court of Appeals of Maryland do not sustain him. The substance of the^bill in^the case of Dilly & Heckrotte vs. Branard, 8 Gill & John, 170, the court remarked, “was properly and generally speaking, exclusively cognizable at lawthe court further stated that “Barnard made a full defence to the action at law,” and “that the defence was a' complete one, and that the cause was fully tried upon its merits.” The case of Prather vs. Prather adm'r. 11 Gill. & John. 110, was a bill praying to be relieved against a judgment at law upon the ground, of payment before judgment. In the cases of Green vs. Robinson, 5 How. (Miss.) R. 80, and Glidwell et al. vs. Hite et al. ib. 110, the language employd by Trotter, J. is certainly strong in support of the position that in cases of concurrent j urisdiction if the party is sued at law, he must make his defence there, and cannot resort to'equity. But do the facts of those cases authorize the opinion in the form in which it is expressed ? In the first case an attempt was made to defend, and in the last, two pleas were filed impeaching the consideration of the note, and upon a fair trial a verdict was found against complainants, and judgment rendered accordingly. These cases were like Le Guen vs. Gouverneur & Kemble; the parties elected to defend at law, and were bound by their election, and if they did not submit their whole defence, the omission was a waiver or abandonment of the grounds of defence not submitted. Upon the argument, the counsel for the respondents, Anderson, who had himself presided in chancery with great credit in Tennessee, admitted that, “where the matter is of original equity jurisdiction, and the party does not submit it to a trial at law, is an exception to the rule that where courts of law and equity have concurrent jurisdiction, the court which first has possession of the subject must decide it.” Again, to relieve against a promissory note upon grounds of want, failure or illegality of consideration never constituted, as in the case of sealed instruments, a portion of the exclusive original jurisdiction of chancery; but it has been at all times competent for a court of law to administer relief. Upon first looking into the cases, from the language employed!,by the judges in delivering their opinions; we were led to believe that there was a greater conflict in the authorities upon this question, than will be found to exist, when the cases are strictly scrutinized, and the facts and the points really involved are elicited. Many of the Judges, we admit, employ language fully sustaining the position of the respondent in this case, but as the cases show that the question was not fairly before them, the language employed is but obiter, entitled to high respect, it is true, as the opinions of men deeply read in the science of the law, but not entitled to the weight, or sufficient to overthrow the solemn judgments and opinions of those courts, where the question was reálly involved, and where the opinions, as has been shown, are so conformably to first principles. It may be also observed that many eminent jurists, like those of former times, entertain great jealousy against courts of chancery, and generally use all exertions to limit and restrict them in the exercise of their ancient jurisdiction. But we feel ourselves constrained to regard the ancient land marks of the jurisdiction of chancery, and will endeavor to uphold, so far as in us lies, that magnificent fabric of judicial ethics, which has been reared in resplendent majesty by the most profound geniuses that ever erected a superstructure of human wisdom, or fashioned a system for the administration oí human justice. We feel no disposition to display a Vandal barbarism by lending a helping hand to demolish and destroy so splendid an edifice, replete with every thing calculated to demand our admiration and reverence; nor would, we remove a single stone or efface a single feature by which the harmony of the superstructure might be endangered, or which might mar the beauty of its fair proportions. For the purpose of fully ascertaining and clearly expounding the rule upon the question now before us, we have looked into the recorded wisdom of the sages, by whom the system of equity jurisprudence was brought into order out of confusion; and also, into the decisions of those courts in America, which have, with a jealous eye, watched all encroachments upon its boundaries, while they have resisted the exercise of jurisdiction properly legal "by courts of equity, and have, on all occasions, marked out the limits of chancery, and asserted its “undoubted prerogatives. While we do not opposeDhe action of the legislature in conferring upon courts of law, jurisdiction in matters originally equitable ; or courts^of law, by their own acts in disregard of the unmeaning trammels of technical absurdity, for the administration of strict and comprehensive justice upon the enlarged and ennobling principles of equity, in granting a remedy demanded by the clearest principles of right andjwrong, in cases where they would, formerly, by adhering to the rigid rules of the common law, have denied it, we will defend and sustain courts of chancery in the exercise of 'their^undoubted jurisdiction, and withstandjits being taken from them by force, by the grasping and expansive arms of commondaw tribunals. If because the legislature has conferred upon courts of law, power to grant relief in cases where they would formerly have denied it, or if because courts of law now, by their own acts, grant relief in such cases upon equitable principles, a party is compelled to submit his case to a court of law, the rule, as laid down by Judge iStosy, is no longer law, “the jurisdiction” does not remain upon its old foundations, but it is “overturned and impaired by this change of authority at law.” So far as defendants are concerned, courts of chancery would be completely ousted of portions of their ancient and intrinsically original jurisdiction. Defendants would be compelled to submit their defence to whatever tribunal their opponents might select, if they should be entitled to select a tribunal and if the plaintiff’s cause of action should be purely legal, the defendant would be compelled to submit his defence to a court of law, however much better a court of equity might be qualified to grant him relief; and that too notwithstanding his defence belonged intrinsically to the original jurisdiction -of chancery. Such we do not conceive to bé the law, but that it is as it has already been declared by this court. Where the defence is purely legal, and exclusively cognizable in a court of law, as in the cases of Dugan vs. Cureton, 1 Ark. Rep. 31. Andrews vs. Fenter, 1 Ark. Rep. 186. Cummins vs. Bentley, 5 Ark. Rep. 9. Watson vs. Palmer, 5 Ark. Rep. 501, and a variety of other cases already cited, the party is bound to defend at law and cannot have relief in chancery, unless he was deprived of his defence by surprise, accident or mistake, or fraud- of the opposite party, unmixed with negligence on his part, or unless he was ignorant of important facts material to his defence upon the trial at law, and which he could not have discovered and availed himself of by due diligence at the time of the trial. Upon this careful review of the authorities, the court is confirmed in the correctness of the rule laid down in Bentley’s ex’r. vs. Dillard, that where the jurisdiction of courts of chancery and courts of common law is concurrent, in consequence of courts of law having enlarged their jurisdiction by their own acts, or of its having been enlarged by act of the legislature without prohibitory words, the party may make his election as to the tribunal to which he will make his defence, and once having made that election, he is bound by the decision whatever it may be, and that his right to submit the matter to a court of chancery is, in no degree impaired by the power of courts of law, at this time, to take cognizance of the subject. And we may further add that if a party resists a recovery against him in a court of law, as in the case of Le Guen vs. Gouverneur & Kemble, upon a portion of his defence, where he had full knowledge of the whole of the defence, .and where, by due inquiry and ordinary efforts, he could have obtained the proof, he is, like other litigants in similar cases, bound by the election, and is considered as having waived or abandoned the grounds of defence so omitted to be made. And further, as in the case of Smith vs. McIver, in a case of concurrent jurisdiction, if a party defends at law, chancery will not take cognizance of the cause, and rehear it upon the same state of facts, upon which it was tried at law without the addition of any equitable circumstances to give jurisdiction, but will respect the judgment of a court of competent jurisdiction already pronounced upon those facts. The complainants in this case are sureties upon a bond for the payment of money, by the form of which they .might have been enabled, as has already been shown, to aver the fact of their surety-ship without contradicting their deed; yet, we do not conceive that, for that reason, they were necessarily driven to make their defence at law, any more than did the form of the recognizance in Rathbone vs. Warren, compel the plaintiff, who was surety in a recognizance of bail, to submit* his defence in the action at law in that case. It thus appearing upon the face of the bill, that it contains sufficient equity to entitle the complainants to-'come into chancery, it will be next considered whether the plaintiffs did make such a de-fence in the suit at law against them as will preclude a hearing in .equity. Neither the pleadings nor the evidence show that they made any defence whatever to that action. The respondent cannot complain that they waived objections to the circuit judge trying the cause, nor should they be prejudiced by that waiver, as it removed a constitutional impediment in the complainant’s way for a speedy recovery of his judgment. ' It is contended by the respondent that he did bring a proper suit within the time specified in the notice and required by law, but that the judgment and-opinion of the Supreme court upon that suit, as brought in Watkins vs. McDonald et al., 3 Ark’s 266, were erroneous'. The decision in that case was not only by a court of competent but of exclusive jurisdiction, and was affirmed on appeal by the highest appellate tribunal known to our laws, and is final and conclusive upon the parties. The judgment rendered in such a •case can never be collaterally reviewed by another tribunal. If the circuit courts, in the exercise of their chancery jurisdiction, could review questions thus solemnly decided, they would become appellate tribunals for the correction of the errors of the supreme court. 'Without citing other authorities (and they are numerous) Smith vs. McIver, already quoted, is conclusive-upon this point. Every court múst respect the judgments <of other courts of competent jurisdiction, and if a judgment is pronounced in chancery, a court of law will never attempt to review it, or pronounce it erroneous; and ¡so, as many of the cases examined and quoted by us.in this opinion -pró'vé, if á court .of law pronounces an -opinion, a 'court of chan-eery will never take cognizance of it upon the same state of facts upon which it was tried at law: but in all cases the questions so decided, are considered as finally adjudicated. If the question involved in that case were now openly before the court for the first time, we are not prepared to say that our decision would not be different. The respondent did not, therefore, institute a valid action and prosecute the same to judgment and execution, as was required of him, and the case stands in the same attitude, as though he had instituted no action at all. His effort to do so, in connection with the fact that the appellants did not make their defence in the action at law against them, gives a reason why he should be exonerated from the costs of this suit. We do not perceive that the appellants were guilty of delay in making their application for an injunction. If they waived, as is contended by the appellee, the constitutional disability resting upon the circuit judge, to try the cause the judgment was obtained against them sooner than it would otherwise have been, and to injoin which they were compelled to make their application for an injunction to a special judge; and for aught that appears upon the record, they made their application for an injunction the moment ¡there was a special judge competent to grant the same. The facts of the solvency of McDonald at the time of the notice ;and subsequent insolvency, are not necessary to be enquired into, as has already been shown. If it were, it is doubtful whether the debt could have been made of him if the suit had been brought according to law within the time specified in the notice. A portion, however, and perhaps the whole might have been made, and so far, the failure to bring a proper action and prosecute the same to judgment and execution operated as a prejudice to the sureties. The court, then, being of opinion that, from the facts of the bill and the admission contained in the answer and testimony taken in the cause, the sureties are discharged both in law and equity from liability, the decree of the circuit court exercising chancery jurisdiction must be reversed, this cause remanded to said court, with directions to re-instate the injunction and to decree the same perpetual, and £o decree the costs of this suit in that court against the complainants.